Ross E. KIMBALL, Appellant,

v.

FIRST NATIONAL BANK OF FAIR-BANKS, a National Banking Association, as Executor of the Estate of Antonio Urteaga, Deceased, Appellee.

No. 889.

Supreme Court of Alaska.

June 13, 1969.

———◆———

Charles E. Cole, Fairbanks, for appellant.

Charles J. Clasby, Fairbanks, for appellee.

Before NESBETT, C. J., and DIMOND and RABINOWITZ, JJ.

RABINOWITZ, Justice.

In the single specification of error which has been presented in this appeal, appellant asserts that the superior court erroneously set aside a stipulation for settlement and consent to the entry of a decree of foreclosure. We affirm the superior court's order.

Antonio Urteaga died on August 20, 1955. In his will the First National Bank of Fairbanks was named executor and Warren A. Taylor was retained as counsel by the executor. In August of 1952 and May of 1955, Antonio Urteaga had loaned money to appellant. In conjunction with these loans, which totaled approximately $28,000, appellant gave Antonio Urteaga two promissory notes covering the amounts of the loans, as well as mortgages on certain real property which appellant owned in Fairbanks. After Antonio Urteaga's will was admitted to probate, the executor instituted, on May 6, 1958, a foreclosure action against appellant in which the executor sought to·foreclose the subject mortgages and to hold appellant for any deficiency.[1] In his an-

1. In the executor's "First Semi-Annual Account and Report," which was filed in 1956, it was stated in part:
[H]owever it is the opinion of your [executor] * * * that it will be necessary to bring suit to foreclose the mortgages securing the payment of said notes to effect payment thereof.

swer, appellant asserted several affirmative defenses.[2]

Appellant then instituted a separate action against Gale Tadzik for delinquent rents under a lease which covered a portion of the premises which were involved in the executor's then pending foreclosure action against appellant.[3] Thereafter, the foreclosure action and appellant's suit against Tadzik were consolidated and Tadzik was given leave to intervene in the foreclosure action. Tadzik then intervened, admitted an indebtedness to appellant in an undetermined amount, and tendered $5,000 into the registry of the court in reduction of this obligation.[4]

After many delays, the consolidated actions were scheduled to go to trial in October of 1964.[5] On the eve of trial, respective counsel notified the superior court that settlement negotiations were taking place and requested a short continuance. This request was granted and on the following day counsel reported some progress in their negotiations. Still unresolved were questions of obtaining the consents of the heirs to the settlement, agreement to the settlement by an officer of the First National Bank, and financing of the settlement by appellant.[6] During this second court appearance in regard to the possibility of settlement, counsel for appellant agreed that approval of the heirs and financing

by appellant had not as yet been accomplished. In this regard, appellant's counsel stated: "I think if these two matters can be resolved, we have the case settled, subject only to the approval by the court as to its fairness and propriety."[7] Later in the day counsel again came before the superior court at which time appellant's attorney, Mr. Boyko, stated:

We have made this much progress: We have prepared a four-page, five-page stipulation for settlement and consent to entry of decree of foreclosure which has not yet been signed by the parties, but which the attorneys have agreed upon in principle.

Respective counsel then represented to the court that the stipulation would be signed and it was then read into the record by appellant's counsel, Mr. Boyko. At this point the trial judge stated in part:

I don't have any reservations in mind at this time in the matter of approving any settlement in which these parties agree to * * * I would very likely approve any agreement that these parties do join in. * * * I will study this agreement.

A written stipulation dated October 7, 1964, was thereafter entered into by all counsel and approved by appellant and Gale Tadzik.[8] The stipulation was not approved by any officer acting for and in behalf of

2. Appellant admitted execution of the notes and mortgages. Under the affirmative defenses which were asserted, the executor's recovery could have been limited to $17,378.

3. In her answer, Tadzik denied any delinquencies and counterclaimed for damages resulting from appellant's mortgages to Antonio Urteaga which were asserted to have damaged her option rights, under the lease, to purchase the premises.

4. Tadzik cross-claimed against appellant again seeking recovery for damages because of injury to her option rights to purchase the subject premises.

5. Throughout this period, Tadzik continued to occupy the premises and dur-

ing 1961 and 1962 deposited monies into the registry of the court.

6. At this time counsel for the executor, Warren A. Taylor, stated in regard to the First National Bank that "the bank feels that they, right at the present time, the Board of Directors would not go for it, so maybe we have to make another approach for the money."

7. At this stage of the litigation, appellant was represented by Edgar Paul Boyko and George M. Yeager.

8. Warren A. Taylor and Warren Wm. Taylor signed the stipulation as counsel for the executor; Edgar Paul Boyko and George M. Yeager signed as attorneys for appellant; and Eugene V. Miller signed as attorney for Gale Tadzik.

the executor First National Bank.[9] A copy of this stipulation was lodged with the superior court on October 7, 1964. Although space was provided at the foot of this document for approval by the superior court, it appears that the superior court at no time indicated its approval of the stipulation on the document itself.[10]

Subsequent to the submission of this stipulation to the First National Bank, it was referred to the bank's general counsel, Collins and Clasby. On October 13, 1964, the Trust Investment Committee disapproved the offer contained in the stipulation. On October 14, 1964, the bank's general counsel notified respective counsel for the parties of the bank's objections to the proposed stipulation.[11] In regard to paragraph four of the proposed stipulation, general counsel for the bank advised counsel for the parties that:

> Paragraph 4 must be deleted. I am advised that under the federal regulations governing national banks with trust powers, the bank must keep wholly separate its trust department and its commercial department, that it cannot deal, directly or indirectly, with itself as between the commercial and trust functions. It cannot and will not lend Mr. Kimball money with which to redeem the property; it cannot and will not act as a loan finder to secure financing for Mr. Kimball from any other person or bank. It will do nothing to obstruct his obtaining a loan from any one else, of course.

On March 3, 1965, appellant wrote William Stroecker, president of the First National Bank, stating that he wished to meet with him "in the very near future to discuss the details for a loan from or through First National Bank secured by my property on South Cushman." Mr. Stroecker then telephoned appellant's counsel, Mr. Yeager, on March 10, 1965, and advised him that the First National Bank would "not loan Kimball." Appellant, on March 25, 1965, again wrote to Mr. Stroecker. On April 6, 1965, general counsel for the First National Bank wrote to appellant's counsel. This April 6, 1965, letter from Collins and Clasby to Mr. Yeager reads in part as follows:

> I enclose a copy of a letter bearing the signature of Ross E. Kimball, addressed to Mr. William Stroecker, and dated March 25, 1965, concerning the Urteaga estate.
>
> Mr. Kimball's letter suggests to me that he is not aware of the contents of the correspondence between this office, your office, and Taylor & Bullerwell of some months ago.

---

9. Near the foot of the "Stipulation for Settlement and Consent to Entry of Decree of Foreclosure and Order Staying Execution Thereon" appears the following text:
 Approved:
 First National Bank of Fairbanks, Executor of the Estate of Antonio Urteaga, Deceased
 By ————————————
 Title ————————————
 Plaintiff

10. The concluding paragraph of the stipulation reads as follows:
 ORDER
 The foregoing stipulation is hereby approved, the parties to submit an appropriate decree and order staying execution in accordance herewith.
 DATED at Fairbanks, Alaska, this ——— day of October, 1964.

 ————————————
 Superior Court Judge

11. Copies of this letter were sent to George Yeager, William Taylor, Warren Taylor, and Eugene V. Miller.
 The stipulation basically provided for settlement of the debt owed by appellant to the Estate of Antonio Urteaga. In the stipulation it was approved that the executor waived, for six months, any rights to execute against and sell the subject real property. It was further provided that the First National Bank was obliged to make a good faith effort to either provide through its own facilities a loan of $30,000 to appellant to finance the settlement "or to assist, to the best of its ability the said Ross E. Kimball in obtaining said loan * * *" for $30,000. The stipulation also provided for settlement of the claims between appellant and Tadzik.

The First National Bank cannot properly lend money to Mr. Kimball. Even if it could properly do so, it would be unwilling to do so because of Mr. Kimball's past failure to keep the obligation owed Urteaga and the estate current.

Every indication we have from the Urteaga heirs indicates that they were willing to go along with the $35,000.00 settlement figure in the expectation of prompt cash payment. Mr. Kimball does not appear to intend to make prompt cash payment, and I regard it as rather likely that we shall have to apply to the court for setting aside of the stipulation.

On July 22, 1966, the superior court dismissed the consolidated foreclosure action pursuant to Civil Rule 41(e).[12] Thereafter, on September 28, 1966, appellee First National Bank moved to reinstate the foreclosure action, to set aside the stipulation for settlement, and to set the foreclosure action for trial. In part, the grounds asserted in support of the motion were that the attorney for the estate of Antonio Urteaga lacked authority to enter into any settlement on behalf of the executor and that the executor First National Bank did not consent to the stipulation for settlement. On February 15, 1967, the executor's motion was granted,[13] trial was held on the foreclosure action, and a judgment was entered.[14] This appeal followed.

■ ■ As we indicated at the outset, our study of the case has led us to the conclusion that the superior court's setting aside of the October 7, 1964, stipulation for settlement and reinstatement of the foreclosure action should be affirmed. We reach this conclusion primarily on the ground that on the facts of this record counsel for the executor, First National Bank, did not possess authority to settle or compromise the foreclosure action in behalf of the executor nor did the executor in any way ratify, affirm, or adhere to the October 7, 1964, stipulation for settlement.

■ It is well established in this country that an attorney has no implied authority to compromise or settle a claim on his client's behalf.[15] What is lacking in this record is any precedent special authority

12. This rule provides that:
Actions which have been pending in a court for more than one year without any proceedings having been taken therein may be dismissed as of course, for want of prosecution, by the court or on motion at a call of the calendar. Such cases may also be dismissed for want of prosecution at any time on motion of any party upon notice to other parties.

13. In granting the motion, the trial judge said in part:
I'm going to set the matter down for the first open trial date; I'll reinstate the action for foreclosure * * * and require the [executor] * * * of this estate to proceed immediately towards getting some money for these heirs. The trial court apparently was of the opinion that its duty was to insure that the heirs of Antonio Urteaga received their money and that appellant's remedy for any breach of the stipulation was for damages in a separate action.

14. Under the judgment which was entered on July 14, 1967, the executor recovered $63,968.35, plus attorney's fees in the amount of $7,140 and costs in the amount of $193. The judgment also directed the sale of the mortgaged properties. The $5,006.86 remaining in the court registry of the monies that had been deposited by Tadzik was ordered applied on the judgment.
The property was then sold at public auction and bid in by the executor for $60,000. The sale was confirmed and a deficiency judgment of $8,002.32 was entered against appellant.

15. Ricketts v. Pennsylvania R. R., 153 F.2d 757, 760, 164 A.L.R. 387 (2d Cir. 1946); 7 Am.Jur.2d Attorneys at Law § 127 (1963); Annot., Authority of Attorney to Compromise Action, 30 A.L.R.2d 944, 945 (1953); 7 C.J.S. Attorney and Client § 105, at 928 (1937), states:
[I]t is a well settled general rule that the ordinary employment or retainer of an attorney to represent a client with respect to litigation or other matters does not of itself give the attorney the implied or apparent authority to bind his client by a settlement or compromise of the cause of action, claim, or other matter or right, with respect to which he was employed, and that in the absence of express authority he cannot do so.

running from the First National Bank as executor to either Warren A. Taylor, or Warren Wm. Taylor, to settle or compromise the foreclosure action. Also absent is evidence of any ratification of the settlement on the part of the First National Bank subsequent to the attorneys' execution of the instrument on October 7, 1964. Thus, the prerequisites which would bind the executor First National Bank to the October 7, 1964, stipulation for settlement are not found in the factual circumstances of the case. It is apparent from the record that all counsel who participated in the negotiations which preceded the drafting of the stipulation for settlement anticipated that the instrument would be executed by the parties as well as by their respective attorneys. This conclusion is borne out by the court proceedings which took place on the 5th and 6th of October 1964, and from the text of the instrument itself. At no point in the proceedings below did appellant allege or indicate the existence of any evidence which would refute the executor's contention that it had not given authority to either Warren A. Taylor or Warren Wm. Taylor to compromise, or settle, the foreclosure action. In such circumstances there were no factual issues which required resolution by hearing.

Similarly, there is an absence of any evidence in the record that the executor First National Bank ratified, or consented to the stipulation which had been entered into by its attorneys in the foreclosure action. In this regard, we believe that the October 13, 1964, letter of general counsel for the First National Bank is of significance. By virtue of this letter, together with general counsel's letter of April 6, 1965, appellant's attorneys, as well as the attorney for Gale Tadzik, were informed of the executor's detailed objections to the October 7, 1964, stipulation for settlement.

 While we agree with appellant's contention that the parties are bound by a settlement stipulation in the same manner as they would be bound by any contract,[16] the distinction here is that the First National Bank, as executor of the estate of Antonio Urteaga, never became a party to the settlement stipulation. If there were any factual issues to be resloved concerning the lack of authortiy of Warren A. Taylor, or Warren Wm. Taylor, to settle or compromise the suit the executor had instituted against appelant, then it was incumbent upon appellant to have notified the trial court of the same in his opposition to the bank's motion to set aside the settlement and to reinstate the foreclosure action.[17] Absent any indication of material factual questions relating to these issues, we find no merit in appellant's suggestion that these questions must be remanded to the superior court for the purpose of conducting an evidentiary hearing thereon. We therefore, conclude that the superior court did not err in entering its order of February 15, 1967, in which the settlement was set aside and the foreclosure action reinstated.[18]

Admittedly, several facets of this record are confused but it appears with a certain degree of clarity that the trial judge was concerned as to the delays which had taken place in this case, and that no monies had as yet been received by the heirs of Antonio Urteaga.[19] The executor's motion to set

---

16. *See* Greenspahn v. Joseph E. Seagram & Sons, Inc., 186 F.2d 616, 620 (2d Cir. 1951), where the court said:

> To obtain relief from a stipulation the moving party must show that unless relieved he will suffer a substantial injustice and that the other parties to the stipulation can be restored to the same position they would have had if no agreement had been made.

17. It was also incumbent upon appellant to indicate to the court the existence of factual issues, if any, relating to the question of whether the bank, as executor, ratified or consented to the stipulation for settlement.

18. According to appellee, "In reality the court did not 'relieve' appellee of 'its stipulation,' it merely ministerially recorded the non-existence of any agreement."

19. Under AS 13.15.010(3) of our probate code, the superior court is vested with

aside the stipulation for settlement and to reinstate the foreclosure action was made some two years after the October 7, 1964, stipulation had been lodged with the court. The executor's motion provided the superior court with the very first indication that the First National Bank, as executor, entertained objections to the terms of the stipulation. This same motion also made manifest to the superior court for the first time the grounds for the executor's objections to the settlement.[20] In light of the basis of the executor's objections [21] and the inaction which had occurred since the stipulation was lodged with the court on October 7, 1964, we believe that the superior court's action in granting the motion to set aside the stipulation and reinstate the foreclosure action should be sustained.

Affirmed.

jurisdiction in all "testamentary and probate matters to * * * direct and control the conduct and settle the accounts of executors * * *."

20. From the record it would appear that the executor did not file with the superior court copies of its letters of October 14, 1964, and April 16, 1965, in which general counsel for the executor had articulated to both appellant's counsel and Tadzik's counsel the reasons why the First National Bank objected to the settlement.

21. In addition to the general objection that the First National Bank would not have authorized the loan required by the stipulation because appellant was a bad credit risk, counsel for the bank pointed out that the stipulation involved two violations of federal acts as follows:

(1) The bank was required to act as agent for appellant in procuring a loan on his real estate in violation of federal banking law, 12 U.S.C.A. § 92 (1916).

(2) The terms of the loan to be made by the First National Bank as set forth in the stipulation were such that the loan could not possibly satisfy the federal standards of 12 U.S.C. § 371 (1964), which limit the size of real estate loans to certain percentages of the appraised value and set time limits within which specified percentages of the loan are required to be amortized by the installment payments.

The bank also believed that a violation of 12 C.F.R. § 206, 19(d) (2) (i) was involved, apparently not realizing that this section had been repealed in 23 Fed. Reg. 10476 (1958).