**Michael Truman PROPST, Appellant,**

v.

**Judith Frances PROPST, n/k/a Judith Frances Libby, Appellee.**

**No. S–2283.**

Supreme Court of Alaska.

June 16, 1989.

Judith Bazeley, Anchorage, for appellant.

Joan M. Clover, Gruenberg & Clover, Anchorage, for appellee.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

OPINION

BURKE, Justice.

This appeal presents the question whether the superior court abused its discretion in refusing to modify an order requiring a non-custodial parent to pay post-majority educational child support.

## I. FACTS AND PROCEEDINGS

Michael Propst and Judith Libby [1] were married in 1965. They have three children: Christopher, born in 1966; Andrew, born in 1967; and Matthew, born in 1971.

Propst and Libby were divorced in 1974. They agreed that Libby would have custody of the children and that Propst would pay child support of $225.00 per month per child.

In 1981, Superior Court Judge Carlson modified the child support provisions. The court increased Propst's obligation to $700.00 per month per child until each child reached his eighteenth birthday. In addition, Judge Carlson ordered Propst to continue to pay support until each child's twenty-third birthday, so long as the child remained a full-time student.

Propst appealed the 1981 modification order on the ground that the superior court erred by requiring him to pay post-majority educational child support; however, the appeal was dismissed by stipulation of the parties. Propst and Libby stipulated that, although the children were likely to attend college, no definite plans had been made and the time for payment was still far in the future; [2] therefore, family funds would be better spent on matters other than the pending appeal. Libby also agreed that she would not raise either the dismissal of the appeal or the passage of time as a waiver of Propst's right to move to modify the support order.

Shortly before Christopher's eighteenth birthday, we ruled that the legislature did not intend to authorize post-majority edu-

1. Judith Libby was formerly known as Judith Propst. Her maiden name was restored to her in 1981.

2. When the appeal was dismissed, the children were fifteen, fourteen and ten years old.

cational child support awards. *Dowling v. Dowling*, 679 P.2d 480 (Alaska 1984). Propst contacted the Child Support Enforcement Division (CSED) and was informed that CSED would not enforce the post-majority support order.

Christopher started college in 1984 and Andrew started college in 1985. At about the time they began college, Propst presented them with "Guidelines for College Money from Dad" which established certain conditions under which Propst was willing to help pay for their college educations.[3] Propst apparently made payments to or for his sons until the summer of 1986.

In July 1986, CSED sent Propst a notice of liability for unpaid child support. Unable to resolve the rekindled dispute, Propst moved for relief from the 1981 judgment pursuant to Alaska Civil Rule 60(b)(5) or, in the alternative, for modification of the child support award pursuant to AS 25.24.170. Master Andrew Brown issued a report recommending that Propst's motion be denied. Judge Peter A. Michalski approved the master's report. Propst appeals.

## II. STANDARD OF REVIEW

■ The question whether to modify an existing child support order rests in the sound discretion of the superior court. *Headlough v. Headlough*, 639 P.2d 1010, 1014 (Alaska 1982). Similarly, the superior court has discretion whether to grant relief from judgment under Civil Rule 60(b). *Burrell v. Burrell*, 696 P.2d 157, 166 (Alaska 1984). Therefore, the decision of the superior court will be affirmed absent an abuse of discretion.

## III. THE POST–MAJORITY EDUCATIONAL CHILD SUPPORT DECISIONS

In *Hinchey v. Hinchey*, 625 P.2d 297 (Alaska 1981), we ruled that AS 25.24.160(2)[4] authorized the superior court to enter post-majority educational child support awards. Three years later we overruled *Hinchey*. *Dowling*, 679 P.2d at 483.

In *Lawrence v. Lawrence*, 718 P.2d 142 (Alaska 1986), a non-custodial parent subject to a post-majority support order imposed between the *Hinchey* and *Dowling* decisions moved to vacate the educational support award based on the new rule of law set forth in *Dowling*. We recognized two avenues by which such an order might be vacated. First, the non-custodial parent may move to modify the child support obligation pursuant to AS 25.24.170.[5] 718 P.2d at 144–45. The moving party has the burden of demonstrating a substantial change in circumstances to support the modification of an existing award. *Id.* We specifically stated that the change in the law brought about by the *Dowling* decision did not constitute changed circumstances. *Id.* at 145. Since the non-custodial parent introduced no other evidence demonstrating changed circumstances, we ruled that he was not entitled to a modification of the post-majority support award on that theory. *Id.*

Second, we ruled that a non-custodial parent might be entitled to relief from judgment under Civil Rule 60(b)(5)[6] if it

---

**3.** Propst required Christopher and Andrew to send him their grades and tell him how much they needed, what it was for, and where to send it.

**4.** When *Hinchey* was decided, the child support provision was codified at AS 09.55.210. *See* 625 P.2d at 300.

**5.** AS 25.24.170 provides in part:
[A]ny time after judgment the court, upon the motion of either party, may set aside, alter, or modify so much of the judgment as may provide ... for the care and custody of the minor children or for their nurture and education....

**6.** Civil Rule 60(b) provides in part:
On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:
....
(5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application....
....
The motion shall be made within a reasonable time, and for reasons (1), (2) and (3) not more than one year after the date of notice of

was no longer equitable to give the judgment prospective application. *Id.* at 146–47. The court remanded the case to the superior court to determine whether, in light of the *Dowling* decision, it was no longer equitable to enforce the post-majority educational support award.[7] *Id.*

## IV. CIVIL RULE 60(b)(5)

The master concluded that Propst was not entitled to relief under Civil Rule 60(b)(5) because (1) he did not bring the motion within a reasonable period of time and (2) it would be inequitable to relieve him from judgment. Propst argues that the superior court abused its discretion in adopting the master's recommendation. Libby contends that the court acted within its sound discretion.

■ The court has the power to relieve a party from the effect of a final judgment when it is no longer equitable that the judgment should have prospective application. Alaska R.Civ.P. 60(b)(5). The motion for relief from judgment must be made within a reasonable period of time. *Id.*

■ Did Propst bring the Civil Rule 60(b) motion in a reasonable period of time? We believe that he did. There are several points in time at which we might have expected Propst to challenge the validity of the support order. The first logical opportunity arose when the order was entered in April 1981. However, we had decided *Hinchey* a scant two weeks earlier. 625 P.2d 297. Although Propst appealed, he stipulated to dismiss the appeal in part to conserve family resources and because the children were so young.

Propst might have acted in 1984, when *Dowling* overruled *Hinchey* in March, 679 P.2d 480, and Christopher celebrated his eighteenth birthday in June. However, in October, CSED informed both Propst and Libby that it would not enforce the child support obligation for Christopher after his eighteenth birthday. When Andrew reached his eighteenth birthday in October 1985, Propst contacted CSED and was again told that the post-majority support order would not be enforced.

In 1986, CSED abruptly reversed itself and sent Propst a notice of liability for nonpayment of support. Propst moved for relief within two months.

The superior court concluded that these circumstances did not excuse Propst's failure to file a "timely" motion. We disagree. We believe that Propst's delay in seeking relief should not preclude consideration of the merits of his claim because Libby agreed not to raise the passage of time to defeat a motion to modify the award, CSED falsely represented that it would not enforce the post-majority support order, and his family acquiesced in the CSED determination.

■ The remaining question is whether it is no longer equitable to enforce the 1981 order. According to the Restatement (Second) of Judgments § 74, a motion for relief from judgment should be denied if granting the relief would inequitably disturb an interest of reliance on the judgment.[8] The master found that Christopher and Andrew had relied on Propst's direct and indirect payments to them in attending college be-

---

the judgment or orders as defined in Civil Rule 58.1(c). A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation.

7. The Civil Rule 60(b) analysis was criticized in Note, *Lawrence v. Lawrence: The Use of Rule 60(b) Motions Based Upon Post Judgment Changes in Controlling Law*, 4 Alaska L.Rev. 153 (1987).

8. Restatement (Second) of Judgments § 74 (1982) provides:
Except with regard to judgments referred to in §§ 65–66 and 69, relief from a judgment will be denied if:

(1) The person seeking relief failed to exercise reasonable diligence in discovering the ground for relief, or after such discovery was unreasonably dilatory in seeking relief; or
(2) The application for relief is barred by lapse of time; or
(3) Granting the relief will inequitably disturb an interest of reliance on the judgment. When such an interest can be adequately protected by giving the applicant limited or conditional relief, the relief will be shaped accordingly.

cause they made plans and selected schools based on anticipated child support payments.

The boys submitted affidavits that they would not have attended the schools they did had they known that their father would not be forced to support them. They claim that they will have to drop out of school because their mother cannot support them through college. Although the evidence demonstrates that Christopher and Andrew relied on their father's support, there is no evidence that they relied on the enforceability of the 1981 judgment.

First, the stipulated dismissal of the 1981 appeal expressly stated that Propst contested the validity of the post-majority support order. Second, the decision eliminating post-majority support obligations was issued in May 1984, before any of the children started college. *See Dowling*, 679 P.2d at 480. Third, CSED informed Libby in 1984 that it would not enforce the post-majority support order. Fourth, when each of the children started college, Propst gave them written guidelines setting forth conditions for his payment of their college expenses. Moreover, Andrew did not begin college until 1985; therefore, his purported reliance on the 1981 judgment is even more unreasonable than that of his elder brother. Thus, the boys were clearly on notice that Propst believed his contributions were voluntary.[9] Although the boys may have relied on Propst to help them through college, any reliance on the 1981 judgment was unreasonable as a matter of law.

The post-majority educational support award was not a hotly-contested issue during the 1981 modification proceeding. Libby did not specifically request it.[10] Nor was it an integral part of a negotiated property settlement. According to Propst,

Judge Carlson added it to the order *sua sponte*, and there is nothing in the record to the contrary.

In our view, the equities in this situation require that Propst's motion for relief from judgment be granted. We conclude that the superior court abused its discretion in refusing to grant relief under Civil Rule 60(b)(5).[11]

The decision of the superior court is REVERSED and the case REMANDED with instructions to vacate the 1981 post-majority support order *nunc pro tunc*.

RABINOWITZ, Justice, with whom MATTHEWS, Chief Justice, joins, dissenting.

I dissent from the court's holding that the superior court abused its discretion in refusing to grant Michael Propst relief under Civil Rule 60(b)(5).

Michael Propst moved for relief from judgment pursuant to Civil Rule 60(b)(5) or, in the alternative, for modification of the child support award pursuant to AS 25.24.-170. Master Andrew Brown subsequently issued a report in which he recommended that Michael Propst's motion be denied. In part the master concluded that:

Mr. Propst's Motion was filed in September 1986, almost 2½ years after the *Dowling* decision. While Civil Rule 60(b)(5) does not have the one year limitation of (b)(1)–(3), Wright & Miller, *Federal Practice and Procedure: Civil* § 2863, at 202 (1973), says concerning a(b)(5) motion that "[a]ll that is required is that the motion be made in a 'reasonable time.'" Submitting this issue to the court 29½ months after *Dowling*, during which time Ms. Libby and the boys heavily relied on his ongoing payments and in

---

**9.** Ironically, the superior court would effectively punish Propst for being a generous parent and contributing to his sons' educational expenses even though he did not believe he was legally obligated to do so. By some sleight of hand, CSED argues that because Propst voluntarily paid, he is now *obligated* to pay. We believe that this result would astonish parents of college-age children everywhere.

**10.** In her motion to modify the divorce decree, Libby asked for an increase in child support, reimbursement for medical expenses, compensation for inequitable tax treatment, and any "other and further relief" to which she might be entitled.

**11.** Given our conclusion that Propst was entitled to relief under Civil Rule 60(b)(5), we do not address the question whether he was entitled to modification under AS 25.24.170.

such dependence have carved out their future actions, was not within a "reasonable time."

In his report the master also addressed the merits of Michael Propst's motion and concluded that it should be denied. The master reasoned in part as follows:

The main ground for his seeking court relief is the Civil Rule 60(b)(5) aspect. While *Dowling v. Dowling*, 679 P.2d 480 (Alaska 1984), did overrule *Hinchey v. Hinchey*, 625 P.2d 297 (Alaska 1981), holding that AS 25.24.160 authorized support only for minor children, the case of *Lawrence v. Lawrence*, 718 P.2d 142 (Alaska 1986), provides the rationale to deny his motion. . . .

. . . The key issue here is whether it is equitable to terminate Mr. Propst's post-majority support obligation under the April 1981 O.A.J.

. . . .

. . . Here just the opposite would be true—to permit Mr. Propst's post-majority obligation to terminate based on the *Dowling* decision would be a gross "wrong" to the three children and Ms. Libby.

. . . .

Mr. Propst's Motion to end his support obligation should be denied both as lacking foundation under Civil Rule 60(b)(5) and also lacking any evidence of a material and substantial change of circumstance under *Curley v. Curley*, 588 P.2d 289 (Alaska 1979).

The superior court approved the master's report and entered an order denying Michael Propst's motion.

In *Hinchey v. Hinchey*, 625 P.2d 297, 300 (Alaska 1981), this court held that AS 25.-24.160(2)[1] authorized the superior court to enter post-majority educational support awards. *Hinchey* was subsequently overruled in *Dowling v. Dowling*, 679 P.2d 480, 483 (Alaska 1984). In *Lawrence v. Lawrence*, 718 P.2d 142, 144 (Alaska 1986), the non-custodial parent filed a motion to modify the post-majority educational child support provisions of the decree. The motion was filed seven months after the entry of

the decree and four months after the *Dowling* decision. *Id.* In *Lawrence* we recognized two avenues by which such an order could be modified or vacated. One such avenue is that the non-custodial parent may move to modify the child support obligation pursuant to AS 25.24.170. *Id.* at 144–45. In regard to the motion we said that the movant has the burden of demonstrating a substantial change in circumstances to support the modification of any existing award. *Id.* We expressly rejected the father's argument that the change in law brought about by the *Dowling* decision constituted changed circumstances sufficient to support modification of the award. *Id.* at 145. Absent evidence of any other change in circumstances, we concluded that the non-custodial spouse was not entitled to a modification of the support award under AS 25.24.170. *Id.*

In the case at bar, Michael Propst offered no evidence of changed circumstances other than the change mandated by the *Dowling* decision. I would therefore hold that the superior court did not err in refusing to modify the post-majority educational support award under AS 25.24.170.

We also observed in *Lawrence* that a non-custodial parent who is subject to a decree which requires post-majority educational support payments might be entitled to relief from judgment under Civil Rule 60(b)(5). 718 P.2d at 146. More specifically, we recognized that the non-custodial parent might be entitled to relief from judgment under Civil Rule 60(b)(5) if it was no longer equitable to give the judgment for post-majority support prospective application. *Id.* As indicated earlier the superior court agreed with the master's conclusion that Michael Propst was not entitled to relief pursuant to Civil Rule 60(b)(5) both because he did not bring the motion within a reasonable period of time, and because it would be inequitable to relieve him from judgment.

I would conclude that the superior court did not abuse its discretion in denying Propst's Civil Rule 60(b)(5) motion since the

1. *See* maj. op. at note 4.

motion was not made within a reasonable time. Of particular significance is the fact that this court's decision in *Dowling* was issued in March of 1984. Propst did not bring his Rule 60(b)(5) motion until September 1986, approximately two and one-half years after our decision in *Dowling*. Given this fact the Rule 60(b)(5) motion was not filed within a reasonable period of time.

Additionally, my review of the record persuades me that there are no circumstances which indicate that Propst's failure to file a timely Rule 60(b)(5) motion should be excused. Nothing in the record alters the controlling fact that under the provisions of the 1981 judgment Michael Propst was subject to a valid, continuing obligation to provide post-majority educational support for his three children. The parties' stipulation, which led to the dismissal of Michael Propst's appeal of the 1981 judgment, was based on the fact that their children were too young for educational plans to be considered. However, by the time Michael's Rule 60(b) motion was filed, Christopher and Andrew had already entered college. Therefore, any uncertainty concerning their children's educational plans does not provide an adequate explanation for Michael's two and one-half year delay in seeking relief from the superior court's order.

In my view, neither the parties' stipulation nor the subsequent actions of the Child Support Enforcement Division diminished Michael Propst's post-majority educational support obligations. Nor do they furnish any basis for extending the time within which Michael Propst should have sought relief pursuant to Rule 60(b)(5).

I would therefore affirm the decision of the superior court.