Michael A. DEWEY, Appellant,

v.

Helen K. DEWEY (Roberts), Appellee.

No. S–5572.

Supreme Court of Alaska.

Nov. 25, 1994.

Rehearing Denied Jan. 7, 1995.

Fred W. Triem, Petersburg, for appellant.

Charles A. Winegarden, Kodiak, for appellee.

Before MOORE, C.J., RABINOWITZ, MATTHEWS and COMPTON, JJ., and BRYNER, J., pro tem.*

## OPINION

MOORE, Chief Justice.

## I. INTRODUCTION

Michael Dewey (Michael) was divorced from Helen Dewey (Helen), now Helen Roberts, in 1985. Michael agreed to pay child support for both their son, born during the marriage, and Michael's stepdaughter, born to Helen before the marriage. In 1992, Michael filed a motion for relief from judgment, in which he sought to terminate the support obligation for his stepdaughter. This case requires us to determine whether Michael is obligated under the original agreement to support his stepchild, and, if so, whether Michael has made a sufficient showing to terminate his obligation. We hold that Michael remains obligated under the agreement.

## II. FACTS AND PROCEEDINGS

This case concerns the obligations of Michael Dewey to support Tisha Melovidov.[1]

---

* Sitting by assignment made pursuant to article IV, section 16 of the Alaska Constitution.

1. Michael and Helen had one child born to the marriage: Robert Dewey, who was born January

Tisha was born on February 1, 1979. The portion of her birth certificate that lists her father's name is left blank. Tisha's natural father is Jack Fox. Michael married Helen Melovidov (later Dewey) on July 29, 1979, six months after Tisha's birth. It is undisputed that Michael is not Tisha's natural father. During the six years in which he was married to Helen, Michael did not adopt Tisha or legitimate her pursuant to AS 25.20.050.

Michael and Helen subsequently petitioned for dissolution of their marriage, and a decree of dissolution was granted in February 1985. The parties were not represented by attorneys when they obtained their dissolution. Since 1985, the parties have not seen each other, nor has Michael seen either his son Robert or his stepdaughter Tisha. Helen Dewey has since remarried and is now known as Helen Roberts. She currently resides in Kodiak, while Michael lives in Missouri.

Because of the accrual of a large arrearage in child support, Michael's wages have been garnished, and his federal tax refunds have been seized. Michael filed a motion for relief from judgment pursuant to Alaska Civil Rule 60(b) and to AS 25.24.170 on July 16, 1992. The superior court denied this motion by memorandum and order of December 24, 1992. Michael filed a motion to reconsider, which the trial court denied. Michael appeals the denial of his motion for relief from judgment.

## III. DISCUSSION

### A. *Validity of Stepparent's Agreement to Support Stepchild* [2]

■ "At common law, a stepparent-stepchild relationship imposes no obligations and confers no benefits on either the stepparent or the child." *Burgess v. Burgess*, 710 P.2d 417, 422 (Alaska 1985). While some states impose a duty on the stepparent to support the stepchild as long as the stepparent is

married to that child's natural parent,[3] no such duty exists in Alaska. *Id.* at 422 n. 10. Thus, while married to Helen, Michael had no duty to support Tisha. Furthermore, even in those states where the stepparent does have a support obligation while married to the natural parent, such obligation terminates upon the divorce of the stepparent from the natural parent. *See, e.g.*, Wash. Rev.Code § 26.16.205 (West 1986 and Supp. 1994); *see generally* David V. Sweet, Annotation, *Stepparent's Postdivorce Duty to Support Stepchild*, 44 A.L.R.4th 520, 531–39 (1986) ("a stepparent has no postdivorce duty to support a stepchild").

However, there are certain exceptions which may cause a court to impose a continuing support obligation on the stepparent. One exception occurs where the stepparent has made an express written or oral agreement to support the stepchild, where such agreement is enforceable under state law. *See, e.g.*, *Brown v. Brown*, 287 Md. 273, 412 A.2d 396, 402 (1980). There are other possible exceptions based on equitable principles, such as promissory estoppel, equitable estoppel or equitable adoption.

■ In this case, Michael explicitly agreed to support Tisha in the Petition for Dissolution of Marriage. This agreement is enforceable under Alaska law, and therefore an exception to the general rule that no post-divorce support requirement exists here. While there is no Alaska case directly on point, we have held that parties are bound by settlement stipulations in the same manner as they would be bound by contract. *Godfrey v. Hemenway*, 617 P.2d 3, 8 (Alaska 1980); *Kimball v. First Nat'l Bank*, 455 P.2d 894, 898 (Alaska 1969). "The courts look with favor on stipulations designed to simplify, shorten or settle litigation...." *Godfrey*, 617 P.2d at 8. Absent a showing of a cognizable contract defense, such as fraud, we

---

29, 1980. Michael Dewey does not contest his duty to pay support for Robert because Michael is Robert's biological father.

**2.** This issue presents a question of law, which we review *de novo*. We "adopt the rule of law that

is most persuasive in light of precedent, reason and policy." *In re K.L.J.*, 813 P.2d 276, 278 n. 1 (Alaska 1991).

**3.** *See, e.g.*, Wash.Rev.Code § 26.16.205 (West 1986 and Supp.1994).

hold parties to their voluntary bargains.[4] *See also, Carter v. Brodrick,* 644 P.2d 850, 851–2, 855 (Alaska 1982) (indicating that Alaska would enforce a stepparent's right to visitation where parental agreement, negotiated by the parties and incorporated into the divorce decree, clearly indicates stepparent has assumed in loco parentis status).[5]

At least one other jurisdiction has explicitly recognized that a stepparent can create a contractual right to support a stepchild. In *Brown v. Brown,* 287 Md. 273, 412 A.2d 396 (1980), the Court of Appeals of Maryland held that a stepparent was liable for support for a stepchild under a separation agreement incorporated into the divorce decree, but because the stepfather had no underlying legal duty of support, he was unconstitutionally jailed for contempt in an attempt to enforce the agreement. The separation agreement explicitly provided that the stepfather would pay $30 per week support for the stepchild until majority. *Id.* 412 A.2d at 397. The stepfather fell behind in payments and was imprisoned for contempt of the court decree. *Id.* 412 A.2d at 397–98. The Maryland Constitution prohibited imprisonment for nonpayment of a "debt." *Id.* 412 A.2d at 398. The court held that a decree providing for support of *dependent* children would not constitute "debt" for this purpose. *Id.* 412 A.2d at 401. However, because the legal duty to support did not ordinarily encompass stepchildren, the stepfather's obligation in this case was merely "contractual," and it created nothing more than a debt for which the constitution afforded him immunity from imprisonment. *Id.* 412 A.2d at 402. The court noted that the trial court had a wide array of other enforcement tools available. *Id.* 412 A.2d at 404. The court thus recognized an enforceable contractual obligation based on an agreement by the stepparent similar to Michael's agreement. We agree that a stepparent can assume a contractual obligation to support his stepchild.

Helen also asserts that Michael is liable for Tisha's support on promissory estoppel and equitable estoppel grounds. Because Michael was bound by an express written agreement to support Tisha, we need not address these arguments.

### B. *Modification of Stepparent's Child Support Obligation*

#### 1. *Civil Rule 60(b)*

■ Michael moved for relief from judgment pursuant to Civil Rules 60(b)(5) and 60(b)(6) and AS 25.24.170. Civil Rule 60(b) provides, in relevant part:

> [T]he court may relieve a party ... from a final judgment, order, or proceeding for the following reasons:
>
> (1) mistake, inadvertence, surprise or excusable neglect;
>
> . . . .
>
> (5) the judgment has been satisfied, released, or discharged, ... or it is no longer equitable that the judgment should have prospective application; or
>
> (6) any other reason justifying relief from the operation of the judgment.
>
> The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the date of notice of the judgment....

Alaska R.Civ.P. 60(b). This court will not overturn the superior court's denial of a Rule 60(b) motion absent an abuse of discretion. *Hartland v. Hartland,* 777 P.2d 636, 645 (Alaska 1989).

Michael argued below for relief from judgment under Civil Rule 60(b)(5) because "it is

---

4. In *Cox v. Cox,* 776 P.2d 1045 (Alaska 1989), this court held that parents may not make a child support agreement which is not subject to Civil Rule 90.3. The court recognized that the new child support guidelines adopted in Civil Rule 90.3 "reflect a paternalistic view toward child support agreement which conflicts with the freedom of contract attitude exemplified by [*Malekos v. Yin,* 655 P.2d 728 (Alaska 1982)]." *Id.* at 1048. However, the Deweys' agreement occurred in February 1985, two and a half years before Civil Rule 90.3 became effective on August 1, 1987. Therefore, their freedom to enter into a contract for child support was not restricted by

Civil Rule 90.3. We need not address whether a contract to support a stepchild entered into *after* the effective date of Civil Rule 90.3 would be enforced.

5. Michael argues that "[t]he contract theory ... fails for want of consideration." This argument fails because there is ample evidence of consideration here. In exchange for agreeing to pay child support, Michael received the right to claim Tisha as a dependent for tax purposes, and he also received visitation rights.

no longer equitable that the judgment should have prospective application."[6] Wright and Miller state that this provision requires "some change in conditions that makes continued enforcement inequitable." 11 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2863, at 207 (1973). Additionally, some courts have held that the change in conditions must not have been reasonably foreseeable when the judgment was entered. *See, e.g., Public Serv. Comm'n v. Schaller, Inc.*, 157 Ind.App. 125, 299 N.E.2d 625, 630 (1973). While "the rule should be liberally construed to achieve substantial justice," "final judgments should not be lightly disturbed." *Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396 (5th Cir.1981) (citing 7 Moore's Federal Practice ¶ 60.19, at 237–39). In *Humble Oil & Ref. Co. v. American Oil Co.*, 405 F.2d 803 (8th Cir.), *cert. denied*, 395 U.S. 905, 89 S.Ct. 1745, 23 L.Ed.2d 218 (1969), then-Judge Blackmun wrote:

> [M]odification is only cautiously to be granted; ... some change is not enough; ... the . dangers which the decree was meant to foreclose must almost have disappeared; ... hardship and oppression, extreme and unexpected, are significant; and ... the movant's task is to provide close to an unanswerable case. To repeat: caution, substantial change, unforeseenness, oppressive hardship, and a clear showing are the requirements.

*Id.* at 813.

Michael alleges several changed circumstances. First, his affidavit states that "[s]ince the time of the dissolution, my income has changed drastically and I have not been able to afford to pay child support for both Tisha and Robert." While a drastic change in income may qualify as a substantial change in circumstances, Michael provides no supporting evidence of such a change. He states in his reply brief that when he was transferred from Alaska he lost his 25% tax-free COLA and his "generous" Alaska living allowance. He also states that he has remarried and has two children born of this second marriage. However, he does not make any specific showings of the extent to which his income has decreased in relation to his expenses. He simply did not provide the trial court with sufficient evidence of changed economic conditions to warrant modifying his support obligation.[7]

Michael also points to Helen's remarriage to Mr. Roberts as a substantial change in circumstances. He argues that "[s]ince 1988, she has had another source of support for Tisha." Again, Michael fails to provide any specific evidence demonstrating how much Helen's situation has improved, if at all, and how much Tisha's need for child support has decreased.[8] Furthermore, under the general rule in Alaska regarding stepparents, as provided in *Burgess*, Mr. Roberts would be under no obligation to support Tisha.[9]

Michael further points to his inability to claim Tisha as a dependent for tax purposes

---

6. We note that Michael's opening brief in this appeal does not mention Civil Rules 60(b)(5) or 60(b)(6). His reply brief mentions them, but provides no argument as to why they are applicable here. While we are tempted to consider his arguments waived, we note that Helen's brief addressed the 60(b)(5) and 60(b)(6) issues, and therefore she was not overly prejudiced by Michael's failure to raise the arguments in his opening brief.

7. There is evidence in the record that Michael's income tax refund was seized and that his wages have been garnished since 1992. Michael argues that this is evidence of his "poverty." However, it is merely evidence that he has not been paying his child support obligation.

8. We recognized in *Propst v. Propst*, 776 P.2d 780, 783 (Alaska 1989), that "a motion for relief from judgment should be denied if granting the relief would inequitably disturb an interest of reliance on the judgment." Whether there is such a reliance interest in this case has not been demonstrated.

9. In *Voyles v. Voyles*, 644 P.2d 847 (Alaska 1982), this court held that the remarriage of a former spouse constitutes a substantial change of circumstances requiring the termination of *alimony* as a matter of law. However, the court held that "this rule does not apply where 'alimony' is in fact intended to provide child support, which is a continuing obligation" *Id.* at 849–50. Therefore, it is clear that remarriage does not by itself constitute a substantial change in circumstances that would require a modification of a child support order.

since 1989 as a change in circumstances. However, this inability is merely another symptom of his admitted arrearages on his support obligation. Michael has simply not provided sufficient evidence of inequity in the judgment's prospective effect to warrant relief under 60(b)(5).

■■■ Relief under Civil Rule 60(b)(6) is inappropriate when a party takes a deliberate action that he later regrets as a mistake. *Hartland,* 777 P.2d at 645. Here, Michael deliberately agreed to support Tisha but now regrets the consequences. Furthermore, this court has held that "clause (6) is reserved for extraordinary circumstances not governed by the preceding clauses," and that "[t]ime-barred relief under the first five clauses is not allowed under clause (6)." *Id.* In this case, Michael is essentially alleging a "mistake."[10] Post-judgment relief for a mistake is governed by Civil Rule 60(b)(1), and is time-barred if not brought within one year. Michael cannot assert 60(b)(6) as a means of avoiding this time limitation.[11]

In *Lowe v. Lowe,* 817 P.2d 453 (Alaska 1991), this court identified four factors, in the context of a property division, which constitute "extraordinary circumstances" justifying relief under Rule 60(b)(6):

(1) the fundamental, underlying assumption of the dissolution agreement has been destroyed; (2) the parties' property division was poorly thought out; (3) the property division was reached without the benefit of counsel; and (4) [the asset in controversy] was the parties' principal asset.

*Id.* at 458–59 (citing *Schofield v. Schofield,* 777 P.2d 197, 202 (Alaska 1989)). This court granted relief under 60(b)(6) in *Lowe* because the dissolution petition provided that the husband would have primary custody of the children, when in fact the wife had primary custody after the dissolution.

There is no such destruction of an underlying assumption of the dissolution petition in this case. The parties contemplated that Helen would have custody and Michael would have visitation rights and pay child support. Nowhere in his briefs does Michael argue that the fundamental assumptions have changed. He argued below that the *Schofield* factors apply in this case because, had the parties consulted with counsel, he would not have agreed to support Tisha. Even if this were true, it would not evidence the destruction of a fundamental assumption. As Wright & Miller state: "The broad power granted by clause (6) is not for the purpose of relieving a party from free, calculated, and deliberate choices he has made. A party remains under a duty to take legal steps to

**10.** Michael's memorandum to the trial court stated that "Mr. Dewey's reason for agreeing to pay support *may* simply have been an ignorant belief that he was required to furnish her support because Helen had no other means of support for either child." (Emphasis added.) Michael's affidavit states that "I mistakenly agreed to pay child support for Tisha Melovidov ... even though [she] is not my child. I did so without legal advice; I did not get an attorney to counsel me." As the superior court judge noted, Michael did not specify whether he made a legal mistake, a financial mistake, or some other error. The reference to not having a lawyer implies that he is arguing that he made a legal mistake. However, Helen's affidavit claims that "Michael A. Dewey did not have a mistaken belief that he had to pay child support for TISHA. He wanted to maintain a relationship with TISHA and wanted to support her as his child." Given the conflicting evidence, the superior court's conclusion that Michael's mistake argument was not supported by the record was not an abuse of discretion.

**11.** In his reply brief, Michael raises the possibility that Civil Rule 60(b)(1), allowing relief due to mistake, applies to the child support obligations which came due within one year preceding his July 1992 motion for relief. This court has indicated in dicta that child support payments become judgments once they are due and owing. *Young v. Williams,* 583 P.2d 201, 205 n. 11 (Alaska 1978). According to Michael, *Young* indicates that he could seek relief under Civil Rule 60(b)(1) for all support obligations that became due between July 1991 to June 1992. *But see Propst v. Propst,* 776 P.2d 780, 783 (Alaska 1989) (Civil Rule 60(b)(5) motion seeking prospective relief from child support order which requires monthly payments must be brought within a reasonable time). Regardless of the merits of this argument, we consider it waived because it was not raised in either the superior court or the opening brief. *See Gates v. City of Tenakee Springs,* 822 P.2d 455, 460 (Alaska 1991) (new matters, whether new issues or new theories, presented for the first time on appeal will not be considered); *Braun v. Alaska Commercial Fishing & Agric. Bank,* 816 P.2d 140, 144–45 (Alaska 1991) (insufficient briefing in the opening brief cannot be resuscitated by attention to issues in the reply brief).

protect his own interests." Wright & Miller, § 2864, at 214.

██ It is true that the parties were not represented by counsel. If, as Michael alleges, he would not have agreed to support Tisha if he had known he was under no legal obligation to do so, then this factor is relevant. However, Michael did not cónvince the superior court that he was in fact mistaken as to his legal obligation. Furthermore, even if he were mistaken, the failure to hire counsel by itself would not cause us to grant relief under 60(b)(6). *See Fackrell v. Fackrell,* 740 P.2d 1318 (Utah 1987) (father's pro se status in trial court did not warrant relief from child support obligation under Utah R.Civ.P. 60(b)(7), the equivalent of Alaska R.Civ.P. 60(b)(6)).

A further reason for denying relief here is that the court must "consider[ ] whether relief under clause (6) will further justice without affecting substantial rights of the parties." Wright & Miller, § 2864, at 213. Here, terminating Michael's support obligation would substantially affect Tisha's rights. Michael has not shown that, when his interests are balanced against the interests of the child, it is not inequitable for him to continue paying child support.

 Finally, motions under either 60(b)(5) or 60(b)(6) must be made within a "reasonable time." Here, there is no indication that Michael moved for relief from judgment within a reasonable time. Michael simply gives no reason for his seven year delay in filing a Civil Rule 60(b) motion other than an unsubstantiated claim of a decrease in his income. There is no evidence of circumstances beyond his control which prevented him from asking for relief. *Cf. Propst v. Propst,* 776 P.2d 780 (Alaska 1989) (reversing a denial of 60(b)(5) relief where husband's delay in seeking relief was based on wife's agreement not to raise passage of time to defeat a motion to modify child support award, and where the Child Support Enforcement Division falsely represented that it would not enforce the order).

In a similar factual situation, the Indiana Court of Appeals reached a similar holding regarding postjudgment relief. *Toller v. Toller,* 176 Ind.App. 322, 375 N.E.2d 263 (1978). In *Toller,* the stepfather made no express agreement to support his stepchild, but he was present at a hearing before the order requiring him to support his stepchild was entered. *Id.* 375 N.E.2d at 264. The stepfather failed to object to the court order. Over two years after the date of the dissolution, he filed a 60(b) motion for relief from judgment. The court found that the stepfather did not file this motion within a "reasonable time" under the circumstances, and therefore affirmed the denial of the motion. *Id.* 375 N.E.2d at 265. *Cf. Gill v. Gill,* 211 N.W.2d 374 (N.D.1973) (indicating that Rule 60(b) relief may be appropriate where a support order against a stepfather is obtained by fraud or deceit).

For the foregoing reasons, we find that the superior court did not abuse its discretion by denying Michael's motion for relief under Civil Rule 60(b).

### 2. *Alaska Statute 25.24.170*

 Alaska Statute 25.24.170 allows for modification or termination of child support.[12] This court has held that the moving party must show that a modification or termination of child support is justified by a material and substantial change in circumstances occurring subsequent to the original order. *Curley v. Curley,* 588 P.2d 289, 291 (Alaska 1979). The movant must make this showing by a preponderance of the evidence. *Id.* at 292 n. 9. The court must consider both the needs of the children as well as the needs and financial abilities of both parents. *Id.* at 292. A child support order may be modified notwithstanding the fact that it was based on a separation agreement or stipulation signed by the parties. *Id.* at 291–92. The question whether to modify an existing child support order rests in the sound discre-

---

**12.** AS 25.24.170 provides in relevant part:
(a) Subject to AS 25.20.110, any time after judgment the court, upon the motion of either party, may set aside, alter, or modify so much

of the judgment as may provide for ... the appointment of trustees for the care and custody of the minor children or for their nurture and education....

tion of the superior court. *Propst*, 776 P.2d at 782.

As discussed with respect to Rule 60(b), Michael has failed to demonstrate changed circumstances in this case. He has not made a specific showing of how much his income has decreased in relationship to his expenses, nor has he shown how much, if any, Tisha's need for his support has decreased. *Cf. Curley*, 588 P.2d at 292–93 (holding it was not an abuse of discretion to refuse to reduce the amount of support from $200 to $100 per month per child, where the husband's income declined from $1,815 to $1,400 per month.).

Another shortcoming in Michael's evidence is that he fails to show why the alleged change in financial circumstances justifies modification of his support obligation to Tisha but not to Robert.[13] The fact that Michael seeks relief from only his support for Tisha indicates that his motion is based more on a desire for relief from his allegedly contractual obligation than on any material change in circumstances. Because he has not met his burden of proving a material change in circumstances, Michael is not entitled to modification of the child support award under AS 25.24.170.[14]

## IV. CONCLUSION

Michael entered into an enforceable contractual obligation to support Tisha, which was incorporated into the divorce decree. His possible mistake as to his legal obligation at the time does not warrant modification under the circumstances of this case. He has not provided sufficient evidence of a substantial and material change in circumstances to justify modifying the child support obligation under AS 25.24.170. Therefore, the decision of the trial court denying Michael's motion for relief is AFFIRMED.

**13.** The superior court tangentially addressed this issue by stating that

> [i]t would also be against the best interests of the children to divide them into two classes within a single family, one class containing Robert entitled to receive monthly child support, and a second class containing Robert's half sister Tisha entitled to no support; such a distinction might well foster sibling rivalry, different treatment by caretakers, and emotional stress within the family.

BRYNER, Justice, pro tem., dissenting.

In my view, Michael Dewey made a sufficient showing below to preclude summary denial of his Motion for Relief from Judgment.

In denying Michael's motion summarily, the superior court expressed the view that the entry of the dissolution decree effectively precluded Michael from challenging the support obligation. The court stated, in relevant part, that, "with the entry of the order of support, [Michael] lost the right to unilaterally sever" his *in loco parentis* relationship with Tisha. This conclusion is incorrect as a matter of law: "The mere agreement by an adult to pay money to or for a minor does not, without more, create an *in loco parentis* relationship...." *Brown v. Brown*, 287 Md. 273, 412 A.2d 396, 403 n. 8 (1980).

As a separate basis for denying relief, the superior court further found, as a factual matter, that Michael had failed to establish the nature of the mistake that formed the basis for his motion for relief from judgment. My review of the record convinces me that the superior court was clearly erroneous in finding Michael's allegation of mistake inadequate. In his affidavit, Michael asserted that, "[a]t the time of the dissolution, I mistakenly agreed to pay child support for Tisha Melovidov and for Robert Dewey even though Tisha Melovidov is not my child. I did so without legal advice; I did not get an attorney to counsel me." Reading this statement in a reasonable and common sense manner, I think the core allegation set forth therein is abundantly clear: Michael asserts that, at the time of the dissolution, he mistakenly believed that he was legally obligated to make support payments for Tisha, even though she was not his child and he had never adopted her.[1]

**14.** Michael is entitled to utilize Civil Rule 90.3(h) to seek to modify his obligation as to both children. Under this rule a material change of circumstances is presumed if support as calculated under the rule is more than fifteen percent greater or less than the outstanding support order.

**1.** The affidavit is admittedly sparse on details and may not be a model of specificity, but few pleadings are drafted so artfully as to be ironclad. I believe that, for purposes of determining whether

Although this would at first blush appear to be an assertion of unilateral mistake of law, closer examination of the record discloses otherwise. Helen's response to Michael's motion provides no information to refute, and in fact does not even specifically deny, Michael's claim that his agreement to pay support was premised on the mistaken belief that he had a legal duty to provide continuing support for Tisha. In her response, Helen characterizes Michael's promise to pay support for Tisha as having been voluntarily made; Helen asserts that she had offered to accept fifty dollars per month in support payments for Tisha but that Michael had insisted on paying her two hundred dollars monthly.

Helen's assertion falls short of the mark. Michael's offer to pay more for Tisha's support than Helen demanded certainly establishes that Michael made no mistake about the amount of support he agreed to pay. Yet Michael is not asserting a mistake as to the amount he agreed to pay; he is claiming a mistake as to his legal obligation to pay any money at all. Michael's commendable willingness to pay a generous amount of child support has no logical bearing on, and wholly fails to negate, Michael's core claim of mistake: that the source of his generosity lay in his mistaken understanding of his legal duty toward Tisha.

Indeed, Helen's asserted willingness to accept monthly child support in the amount of fifty dollars for Tisha provides strong corroboration for Michael's claim of mistake and a strong indication that this mistake was not unilateral—that Michael and Helen shared the view that Michael was legally bound to pay at least some amount for Tisha's support. Helen presumably would not have proposed even a minimal payment of fifty dollars per month unless she believed that Michael had a legal duty to support Tisha.

Notably, by asserting in her response to Michael's motion for relief from judgment that the *in loco parentis* doctrine obligated Michael to provide for Tisha's continued support upon dissolution of the parties' marriage, Helen reveals her continuing belief that Michael was legally obligated to provide ongoing support for Tisha by virtue of his marriage to Helen, and not merely as a result of his willingness to undertake a contractual support obligation. This legal view is correctly rejected by the majority opinion in this case. And it is precisely the type of mistaken legal belief that, according to Michael, prompted his own decision to agree to pay child support for Tisha.

Scrutiny of the original dissolution paperwork, attached as an exhibit to Michael's motion for relief from judgment, lends further credence to Michael's assertion of mistake. In the original Petition for Dissolution of Marriage form that was filed by the parties in this case and certified as true by both Michael and Helen, both Tisha and Robert Dewey are listed as "children born of the marriage or adopted." The Child Support Order form, which appears to have been filled in and submitted by the parties, lists Michael as the father of Tisha, not as Tisha's custodian. The Child Support Order purports to require payment of child support based on Michael's status as father, not based on the existence of an underlying agreement or contract to pay support for a child that was neither fathered nor adopted by Michael. Likewise, the Decree of Dissolution itself describes child support as an obligation of "the father."

In short, the record, taken as a whole, strongly suggests that the parties in this case entered into an uncounseled child support agreement in the mistaken belief that Michael's legal status was essentially indistinguishable from that of a natural parent: that the law imposed upon Michael the same duties and obligations upon dissolution that would have been imposed on him had he been Tisha's biological or adoptive father. The record further suggests that in approving the dissolution and ordering support, the superior court acted upon the mistaken

summary disposition of Michael's motion was appropriate, the superior court should have read Michael's pleadings in a common sense manner and resolved any ambiguity in Michael's favor.

At the very least, the court should have called on Michael to submit a supplemental affidavit more particularly describing the mistake that led him to enter into the support agreement.

premise that Michael was Tisha's biological father.

Accepting as true those allegations that remain uncontroverted in Michael's motion for relief from judgment, the record supports the conclusion that "the fundamental, underlying assumption of the dissolution agreement has been destroyed," *Lowe v. Lowe,* 817 P.2d 453, 458 (Alaska 1991), and that relief in at least limited form,[2] would be appropriate under Alaska Civil Rule 60(b)(1) or (b)(6). Under these circumstances, I believe that summary denial of Michael's motion for relief from judgment was improper. Absent an affirmative evidentiary showing that the support order in this case was not in fact based on the parties' mutually mistaken assumptions as to Michael's legal obligations or on the court's mistaken assumption that Michael was in fact Tisha's biological father, I would find error and remand this case for an evidentiary hearing to determine the underlying basis for the original support agreement.

I have no quarrel with the majority's holding that a knowing and voluntary agreement between divorcing parents for child support payments is enforceable on contractual grounds, regardless of the obligor parent's preexisting legal duty to pay support. A purely contractual duty to pay support, however, could arise only upon the showing of a valid contract—one reflecting the informed agreement of both parties. In my view, a contract based on mutual mistake as to the obligor parent's preexisting legal duty to pay support could not be deemed a valid contract. In affirming the superior court's denial of relief, the majority of the court simply assumes that a valid contract was formed in this case. In the face of Michael's claim of mistake, Helen's failure to expressly deny the mistake, and the strong suggestion in the original dissolution paperwork that both parties misunderstood the legal duties applicable in their situation, the majority's willingness

to assume the existence of a valid contract seems unrealistic and unjustified.

Accordingly, I dissent from the court's decision affirming the superior court's order denying relief.

---

**2.** I agree with the majority of the court that Michael has failed to allege or prove circumstances sufficient to excuse his delay in seeking relief from the original judgment. This failure, in my view, would at most preclude Michael's effort to obtain retroactive modification of the support decree. The delay cannot justify denying Michael's request for relief as to payments that have not yet become due, *cf.* AS 25.27.225 (court order for support payment becomes a judgment once the payment is due and owing), or that became due within one year of Michael's motion for relief from judgment—the period of delay deemed presumptively reasonable under Civil Rule 60(b)(1) for motions seeking relief due to a mistake.