Victoria E. COX, Appellant,

v.

John M. FLORESKE, Jr., Appellee.

No. S–14234.

Supreme Court of Alaska.

Nov. 30, 2012.

Loren Domke, P.C., Juneau, for Appellant.

Blaine H. Hollis, Juneau, for Appellee.

Before: CARPENETI, Chief Justice, FABE, WINFREE, and STOWERS, Justices.

*OPINION*

STOWERS, Justice.

## I. INTRODUCTION

Victoria ("Vicky") Cox and John Floreske were married in July 1981. They separated in September 2007 and divorced in June 2009. During their 28 years of marriage, Vicky and John amassed a highly illiquid marital estate including three businesses and two subdivisions, all located in Haines. After a bench trial each party was awarded a mutual right of first refusal on all properties awarded to the other party. This right was personal to the parties and would not survive them. Vicky appeals the superior court's denial of her motion for relief from judgment under Civil Rule 60(b)(4) and (5) arguing that (1) the mutual right of first refusal is void under Civil Rule 60(b)(4), and (2) the superior court abused its discretion when it denied her motion to vacate the mutual right of first refusal under Civil Rule 60(b)(5). We conclude that it was an abuse of discretion to deny the motion to vacate the mutual right of first refusal under Civil Rule 60(b)(5).[1]

1. Civil Rule 60(b)(5) states:
 On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: ... the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated,

## II. FACTS & PROCEEDINGS

During the 28 years Vicky and John were married, they amassed a highly illiquid marital estate worth approximately $3 million, including three businesses[2] and two subdivisions, all located in Haines. The three businesses were Northern Construction, a general contracting business, Southern Energy, a small hydroelectric station, and Crystal Cathedral Water and Sewer Systems (CCWS or Crystal Cathedral), a water and sewer service. The estate was illiquid and included significant debt on most of the property. Vicky and John did not own a house and did not have any retirement accounts or significant funds in banks. All profits from the businesses were invested back into the businesses or in real estate. Only John had the expertise and regulatory permits to run the couple's businesses. Throughout their marriage Vicky worked in the family businesses and managed the household.

Vicky and John separated on September 1, 2007, and Vicky filed a complaint for divorce on January 30, 2008. Vicky's trial memorandum proposed to divide the marital estate equally by remaining in a non-marital partnership with John for several years while the properties were sold. John also expressed an intent to divide the property equally, but proposed Vicky take and operate one of the businesses, Crystal Cathedral, to ensure she had an income. John's trial memorandum also had the following provision:

> Defendant requests a 60–day first right of refusal to meet any offer on any and all of the property to be sold. In addition, if plaintiff [Vicky] is awarded CCWS and later chooses to sell it, defendant requests a 60–day first right of refusal to meet any offer on CCWS.

In April 2009 Superior Court Judge Patricia A. Collins held a bench trial to determine how to equitably divide the marital estate. During the trial, John testified as to his desire to have a first right of refusal:

Q: I'd like you to take a look at, now, our trial memorandum and property table. And is it correct that you would like a 60–day first right of refusal?

A: That's correct.

Q: Okay. And what would you want that on, with regard to?

A: I'd like it on all the pieces of property.

Q: So any of the pieces of property that the court orders sold, you'd like to have a first right of refusal to meet an offer?

A: That's correct.

Q: Okay. And that would include CCWS, if it's awarded to Ms. Floreske and she later decides to sell it?

A: That's correct.

Vicky also expressed the desire for a right of first refusal, but only on one property.

Q: Ms. Floreske, you heard your husband say that he wanted … a first right of refusal on any property that was ordered sold. Is there a particular piece of property that you would like a first right of refusal on?

A: The garden property.

Q: Any other properties?

A: No.

In his closing argument John's counsel once again reiterated John's desire to have a right of first refusal:

MR. HOLLIS: [J]ust a reminder about the first right of refusal. That is very important to Mr. Floreske. We would just ask that it be crafted in a way that's absolutely transparent to Ms. Floreske. In other words, she would not be in any way prejudiced by it.

And it could be both ways. If she wants the same, that's fine.

On June 8, 2009, the superior court entered its findings of fact and conclusions of law. The court ordered an equal division of the marital estate. The court awarded John

---

or it is no longer equitable that the judgment should have prospective application[.]

**2.** In its order on Vicky's Civil Rule 60(b) motion for relief from judgment, the superior court stated there were four closely held businesses included in the marital estate, but this appears to be erroneous. There were only three businesses which were the subject of the parties' dispute and the court's property decision order (and the court's order on the Rule 60(b) motion): Northern Construction, Southern Energy, and Crystal Cathedral Water and Sewer Systems.

all of the businesses except Crystal Cathedral, which was awarded to Vicky. John was also awarded a few high-value real estate properties, and Vicky was awarded most of the lots in two subdivisions, totaling thirty pieces of property. The court provided a right of first refusal to both parties in Finding 11:

Of the significant real estate holdings by the parties, sales of the parcels appear to be generally consistent with asking price. The distribution of assets/debts is intended to give Vicky, who has vacillated about whether she will stay in Haines, income from the sale of these properties, with comparatively little debt, until she decides what she chooses to do next. John is given the option of matching any sales offer for property awarded to Vicky for 15 days after the offer is tendered, after which it may be sold to the successful bidder. Vicky is given the same option with respect to property awarded to John.

Final judgment was entered on September 26, 2009.

Vicky was awarded the Meadowlands residential subdivision as well as a $102,615 bank loan secured by the subdivision. She was unable to make some of the monthly loan payments, so John paid them to preserve his credit because they had co-signed for the loan during marriage. Once she sold Crystal Cathedral, Vicky paid John the money she owed him and retired the bank loan in December 2010.

Vicky and John complied with the right-of-first-refusal provision until fall 2010. Once Southern Energy, the utility, and Crystal Cathedral had been successfully sold, Vicky's lawyer e-mailed John's lawyer asking John to stipulate to having Finding 11 set aside. John, through his lawyer, refused.

On January 24, 2011, Vicky moved for clarification as to what the right of first refusal meant. Vicky reminded the court that John's trial memorandum stated that he wanted "a 60–day first right of refusal to meet any offer on any and all of the property to be sold" and on Crystal Cathedral "if plaintiff is awarded CCWS and later chooses to sell it." Vicky interpreted John's position to be that John wanted a right of first refusal on all properties *the court* ordered sold. Because the court ordered Southern Energy

sold and awarded Vicky Crystal Cathedral, which she subsequently sold, Vicky's position was that all the properties the right of first refusal applied to were now sold. In its order on Vicky's motion for clarification, the superior court stated that the "order gave John Floreske the option of matching any sales offer for property awarded to Ms. Cox for 15 days after the offer is tendered."

Vicky then moved for relief from the judgment on March 9, 2011. Vicky argued that the right of first refusal was void under Civil Rule 60(b)(4) because it "suspend[ed] alienation" in violation of AS 34.27.100(a)(1) and was inconsistent with due process because Vicky did not have the opportunity to argue against such a broad right of first refusal at trial. In the alternative, Vicky argued that the right of first refusal should be vacated under Civil Rule 60(b)(5) due to the indefiniteness of the right. John opposed the motion for relief from judgment.

The superior court denied Vicky's motion for relief from judgment but clarified that the right of first refusal "is personal to the parties and shall not survive them." Although the court noted that it did not want to make Vicky and John "post-divorce business partners," "the reality of the parties' property holdings and related debt was such that some continuing involvement between the parties was anticipated, at least until planned property sales occurred" and that "it was not possible to totally disengage the parties at divorce because of the complexity of their business holdings."

The court also outlined the four reasons it created the right of first refusal: (1) *"both* Vicky and John asked for a right of first refusal on some or all of the marital property"; (2) since the parties anticipated that all their properties would be sold, "fairness suggested that each party should have the chance to match fair market offers for businesses and sub-divisions they built or developed from scratch"; (3) "John's credit standing and contractual obligation[s] ... were such that ... John had (and to this court's knowledge, still has) a very strong financial interest in maintaining the properties and businesses and avoiding 'fire sale' prices that could leave him personally liable for debt

associated with property awarded to Vicky"; and (4) the court intentionally did not require the properties sold within a set period of time because it assumed Vicky and John would "promptly but not recklessly disentangle their significant joint financial interests by sales that were reasonable in financial terms and served their personal interests."

Vicky moved for reconsideration on May 10, 2011, asserting that the court's reason for providing the right of first refusal—that John still had "personal, financial or contractual obligations" on the properties award to Vicky—was no longer true because "Vicky has paid John every dime that she owes him." (Emphasis omitted.) The court denied her motion for reconsideration.

This appeal followed.[3]

## III. STANDARD OF REVIEW

We review a superior court's decision to deny relief under Civil Rule 60(b)(5) for abuse of discretion, reversing only if we are "left with the definite and firm conviction on the whole record that the trial court has made a mistake."[4]

## IV. DISCUSSION

Vicky argues in the alternative that the right of first refusal is void under Civil Rule 60(b)(4) or that it should be vacated under Civil Rule 60(b)(5) because all of Vicky's financial obligations created by the property division have been met and it is no longer equitable for the right of first refusal to continue to have prospective application. Because we conclude that it was an abuse of discretion not to vacate the right of first refusal under Civil Rule 60(b)(5), we do not address Vicky's argument under Civil Rule 60(b)(4).

### A. It Was An Abuse Of Discretion Not To Vacate The Mutual Right Of First Refusal Under Civil Rule 60(b)(5).

Civil Rule 60(b)(5) states: "On motion and upon such terms as are just, the court may relieve a party ... from a final judgment, order, or proceeding for the following reasons: ... the judgment has been satisfied, released, or discharged ... or it is no longer equitable that the judgment should have prospective application." The rule "requires 'some change in conditions that makes continued enforcement inequitable.' "[5] Further, "[t]his motion shall be made within a reasonable time."[6]

#### 1. Vicky's Rule 60(b)(5) motion was timely.

Vicky waited 17 months after entry of judgment to file her Civil Rule 60(b) motion. It appears it took her that length of time to pay off $200,000 in financial obligations on the properties.[7] Her paying off the debt is relevant to the timeliness of her Civil Rule 60(b)(5) motion because only after this 17-month period was John's credit no longer tied to the property awarded to her. Therefore, Vicky argues, her Civil Rule 60(b)(5) motion is timely because only after fulfilling her financial obligations was there a changed circumstance that warranted relief under Civil Rule 60(b)(5). We agree.

We have upheld challenges under Civil Rule 60(b)(5) more than two years after the final judgment when there has been a change

---

3. John filed a "Notice of Intent Not to File a Brief." Vicky consented to John's attorney participating at oral argument.

4. *Princiotta v. Municipality of Anchorage*, 785 P.2d 559, 562 (Alaska 1990); *see also Kennecorp Mortg. & Equities, Inc. v. First Nat'l Bank of Fairbanks*, 685 P.2d 1232, 1236 (Alaska 1984) ("In reviewing the denial of a Rule 60(b)(4) motion, this court does not defer to the discretion of the trial court: '[N]o question of the lower court's discretion is presented by a Rule 60(b)(4) motion because the validity of a judgment is strictly a question of law.' " (quoting *Aguchak v. Montgomery Ward Co.*, 520 P.2d 1352, 1354 (Alaska 1974))).

5. *Dewey v. Dewey*, 886 P.2d 623, 627 (Alaska 1994) (quoting 11 CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2863 (1973)).

6. Alaska R. Civ. P. 60(b).

7. Because the parties went back to court several times between the date when the right of first refusal was initially granted on June 8, 2009, and the entry of final judgment on September 28, 2009, John argued that there was a 21-month delay between when the court created the right of first refusal and when Vicky filed her Civil Rule 60(b) motion on March 9, 2011. But under Rule 60(b) timeliness is measured from the final judgment.

of circumstance after the final judgment.[8] Thus, while the superior court commented that "[t]here is a reasonable argument that her request is an untimely assault on an old judgment," we conclude Vicky's Civil Rule 60(b)(5) motion was timely.

### 2. It was an abuse of discretion to deny relief under Civil Rule 60(b)(5).

 "[A] motion pursuant to Rule 60(b)(5) seeking relief from the prospective application of a judgment requires the court to balance the equities and decide whether relief is warranted."[9] "We will reverse a trial court's denial of Rule 60(b)(5) relief only where the trial court has abused its discretion."[10] We have stated that in order to prevail on a 60(b)(5) motion, Civil Rule 60(b)(5) "requires 'some change in conditions that makes continued enforcement inequitable.' "[11]

 Vicky argues that the fact that she has fully paid all her financial obligations is a changed circumstance. We agree that this constitutes a changed circumstance in this case. Because Vicky has paid all of the debt associated with her properties, John's financial standing is no longer at risk, which was a major consideration in the superior court's reasoning in ordering the mutual right of first refusal.

The equities in this case also require that Vicky's motion for relief from judgment be granted. While Vicky and John requested a right of first refusal at trial, each of their requests was narrower than what the superior court ordered. John requested a "60–day first right of refusal to meet any offer on any and all of the property to be sold" and on CCWS if the company was awarded to Vicky.[12] Vicky requested a right of first refusal only on a single property, "the garden property." In contrast, the superior court's order gave each party a lifetime right of first refusal on all properties.[13]

In his treatise *Equitable Distribution of Property*, Turner states, "[t]he [right of first refusal] option should end within a reasonable time after the property division order. A[n] option with no time limit at all is therefore error."[14] The lifetime right of first refusal on all properties awarded to each party in this case is inconsistent with this principle of marital property division. Additionally, the superior court's order has the effect of giving John some degree of continuing control over Vicky for so long as she owns her properties; not only is this a poten-

8. *See Dixon v. Pouncy*, 979 P.2d 520, 526 (Alaska 1999) (holding that challenging paternity two and a half years after the divorce was not unreasonable as a matter of law); *Propst v. Propst*, 776 P.2d 780, 783–84 (Alaska 1989) (holding that waiting 29 1/2 months after a change in the law relating to post-majority educational child support awards before filing a Rule 60(b)(5) motion was within a reasonable amount of time); *see also Lowe v. Lowe*, 817 P.2d 453, 459 (Alaska 1991) (remanding the case because we could not "say that a motion for relief made four and a half years after entry of judgment is per se unreasonable").

9. *Dixon*, 979 P.2d at 526.

10. *Cook v. Cook*, 249 P.3d 1070, 1083 (Alaska 2011).

11. *Dewey v. Dewey*, 886 P.2d 623, 627 (Alaska 1994) (quoting 11 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2863 (1973)).

12. John later argued that he had intended to request a right of first refusal on all properties, not just the ones the court ordered sold. Howev-

er, this interpretation is inconsistent with his initial request in his trial memorandum: "Defendant requests a 60–day first right of refusal to meet any offer on any and all of the property to be sold. In addition, if plaintiff is awarded CCWS and later chooses to sell it, defendant requests a 60–day first right of refusal to meet any offer on CCWS." If John had intended to request a right of first refusal on all properties, the second sentence about CCWS would have been superfluous.

13. In *Propst v. Propst*, we noted that it appeared the court acted sua sponte when awarding post-majority education support to the children when it had not been specifically requested by the mother. 776 P.2d at 784. This was one factor we considered when weighing the equities in that case and concluding that the superior court abused its discretion when it denied the father's motion for relief from judgment under Civil Rule 60(b)(5).

14. 3 Brett R. Turner, Equitable Distribution of Property, § 9.15 (3d ed.2005) (citing *In re Marriage of Webb*, 426 N.W.2d 402 (Iowa 1988); *Moses v. Moses*, 879 So.2d 1043 (Miss.App.2004); *Rado v. Rado*, 298 A.D.2d 887, 747 N.Y.S.2d 870 (2002)).

**1294**

tial source of friction, it is inconsistent with the superior court's goal to disentangle the parties. Accordingly, it was error for the superior court to award such an option to the parties.[15]

Further, the superior court considered it fair that each party have the opportunity to match fair market offers on the properties they had "developed from scratch." We acknowledge that the opportunity to reclaim potentially sentimental property is a valid consideration, but circumstances have changed. John's financial standing is no longer tied to properties Vicky received in the divorce. The opportunity to buy property should the ex-spouse desire to sell it must be weighed against the strong policy we have

expressed "to disentangle fully interspousal affairs upon dissolution." [16] We are unconvinced that equity requires a mutual lifetime right of first refusal in light of these changed circumstances.

## V. CONCLUSION

The decision of the superior court denying Vicky's Rule 60(b)(5) motion to vacate the order requiring mutual rights of first refusal is REVERSED and the case REMANDED with instruction to the superior court to vacate Finding 11 of its June 8, 2009 order.

---

**15.** We note that in *Odom v. Odom,* 141 P.3d 324 (Alaska 2006), the trial court recognized a father's strong attachment to the family home by awarding him a right of first refusal to purchase it should the mother predecease him, or should she choose to sell it during her lifetime. *Id.* at 329. This lifetime right of first refusal was not contested in that case, and we found no abuse of

discretion when the superior court awarded the home to the mother. *Id.* at 332. *Odom* is distinguishable from this case, where the right of first refusal is contested.

**16.** *Musgrove v. Musgrove,* 821 P.2d 1366, 1370 n. 7 (Alaska 1991) (quoting *Voyles v. Voyles,* 644 P.2d 847, 849 (Alaska 1982)).