*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@appellate.courts.state.ak.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

DAVID SZABO AND JANE SZABO, )
                                 )       Supreme Court No. S-14750
         Appellants, )
                                 )       Superior Court No. 3AN-08-09925 CI
    v.                             )
                                 )       O P I N I O N
MUNICIPALITY OF ANCHORAGE, )
                                 )       No. 6873 – March 7, 2014
         Appellee.        )
                                 )

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, John Suddock, Judge.

Appearances: Kenneth P. Jacobus, Anchorage, for Appellant. Dean Gates, Assistant Municipal Attorney, and Dennis A. Wheeler, Municipal Attorney, Anchorage, for Appellee.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

STOWERS, Justice.

## I.    INTRODUCTION

In February 2010 the superior court issued a final order requiring David and Jane Szabo to pay $311,000 in unpaid fines assessed by the Municipality of Anchorage for failing to remove junk stored on their property. The Szabos did not appeal the order. In February 2011 they filed an Alaska Civil Rule 60(b) motion for relief from judgment. The superior court denied the motion and also denied a subsequent motion for reconsideration. The Szabos now appeal, arguing that the fines assessed in this case are

unconstitutionally excessive and the municipal code provision under which the Municipality proceeded is unconstitutional. Because we conclude that the Szabos' claims do not assert a basis for relief under any section of Rule 60(b), we affirm.

## II.    FACTS AND PROCEEDINGS

David and Jane Szabo own approximately 1.5 acres in the Bear Valley neighborhood of Anchorage. David runs a junk[1] business out of their home. The Szabos' property has been zoned R-6 — "low-density residential"[2] — during the entire time they have owned the property. Storage yards and outdoor warehousing are not permitted in an R-6 district.[3]

In the summer of 2002 the Municipality of Anchorage (the Municipality) received a complaint that the Szabos were using their property as a "Junk/Salvage Yard." The Municipality investigated the complaint and determined that it was well-founded. On August 29, 2002, the Municipality sent the Szabos a letter informing them that the property was not compliant with the zoning code and requiring that they remove the junk within 10 days or face a $300 fine. The Municipality subsequently worked with David to encourage him to clean up the junk, but the Szabos made little progress over the next few months. The Municipality inspected the property in May 2003. The inspection revealed 24 vehicles, numerous car parts, construction materials, plumbing supplies, electric parts, various metal materials, electronics, and other household items.

In August 2003 the Municipality issued an enforcement order requiring the Szabos to bring their property into compliance by October 15, 2003, and informing them

---

[1]     The term "junk" was used by both parties and the superior court to refer to the material the Szabos kept on their property.

[2]     Anchorage Municipal Code (AMC) 21.40.080(A).

[3]     AMC 21.40.080(A)-(E).

that the Municipality could assess fines of up to $250 per day if they failed to do so. The Szabos attempted to appeal the zoning decision, but they failed to submit the required $500 filing fee and their appeal was rejected. It is undisputed that they did not attempt to correct their mistake.

In May 2004, after the Municipality sent the Szabos another noncompliance letter, David began working with the Municipality, developing a plan to clean up the property by October. Two days after the October deadline, David admitted the cleanup was not complete and asked for more time to show substantial progress. The Municipality assessed a one-day $250 fine but reached a new agreement with David involving inspections aimed at avoiding further fines. Over the next several months the Szabos made incremental progress removing the junk. But in January 2005 the Municipality received reports that the Szabos had brought additional junk onto their property.

In August 2006, after observing no progress in the cleanup effort, the Municipality informed the Szabos that it would resume assessing fines for noncompliance. The Municipality assessed $2,500 in fines on October 31, November 13, and November 29, each for ten-day increments of noncompliance. On June 27, 2008, the Municipality assessed a $218,250 fine for noncompliance from November 17, 2006 to June 27, 2008, a total of 873 days.

## A. The Superior Court's Orders

In August 2008 the Municipality filed an action in the superior court for abatement, injunctive relief, and civil penalties totaling $226,000, as well as "$250 per day for each day from June 28, 2008 until the violations are abated." The Szabos, proceeding pro se, answered and denied all of the Municipality's allegations. They also counterclaimed, alleging among other things: (1) the "Municipal Code is unconstitutional"; (2) they "have not had the financial resources to comply"; and

(3) "[t]he 'fine' of $250 per day is unreasonable to the point of 'cruel and unusual punishment.' " The Szabos requested that the court issue an order dismissing all fines and fees, contingent on their compliance by September 30, 2009.

The Municipality moved for summary judgment, arguing that the Szabos' ongoing code violations were irrefutable and that the Szabos had ample opportunity to appeal the original enforcement order and comply. The Szabos did not dispute that the property was not in compliance with code requirements, but reiterated that the fines were "illegally excessive" and that the zoning ordinance and compliance procedures were constitutionally deficient.

On June 3, 2009, the superior court granted the Municipality's motion for summary judgment and ordered the Szabos to clean up the property within 20 days. The court withheld judgment on the issue of fines, signaling its intent to address the issue after abatement was completed. The court found that there were no genuine issues of material fact that the Szabos "have a long history of storing junk, vehicles, equipment and other materials on their property" in violation of the zoning ordinance and "there [had] been no apparent change in uses and condition of the property since September 8, 2003."

The court held an evidentiary hearing on January 25, 2010, to address the Municipality's motion for imposition of penalties. The Szabos objected to the hearing on the grounds that they were not prepared because they believed the hearing was going to be a status hearing rather than an evidentiary hearing. At the hearing the parties disagreed about how much of the junk had been removed; the Szabos contended it was around 50%, and the Municipality contended that it was around 10%.

In February 2010 the superior court issued its supplemental order and final judgment requiring the Szabos to pay the Municipality $226,000 in fines for the period of noncompliance ending June 27, 2008, and $85,000 for the period of noncompliance

from June 28, 2008, through June 3, 2009. The Szabos did not appeal the final judgment.

**B.     Motion For Relief**

In early 2011 the Szabos hired an attorney to represent them, and on February 23, 2011, they filed a motion for relief from judgment under Civil Rule 60(b)(1), (4), (5), and (6). The Szabos argued that the superior court should grant relief: (1) under Rule 60(b)(1) because the January 2010 hearing was an unfair surprise; (2) under Rule 60(b)(4) because the January 2010 hearing and the daily $250 fine violated procedural due process, and thus the judgment was void; (3) under Rule 60(b)(5) because the judgment was inequitable; and (4) under Rule 60(b)(6) because the judgment was tainted by "massive" substantive due process violations. The superior court ordered another evidentiary hearing in May 2011 in light of the Szabos' apparent mistaken belief that the January 2010 hearing would not be an evidentiary hearing.

In April 2012 the superior court issued an order denying the Szabos' Rule 60(b) motion for relief. The superior court rejected the Szabos' constitutional challenge to AMC 21.25.050(E),[4] concluding that their case did not involve that regulation, which only governs an action by a private citizen to judicially enforce a zoning ordinance. The court also rejected the Szabos' argument that the fines imposed were unconstitutionally excessive, finding that "failure to pursue this issue on direct appeal is fatal." The Szabos filed a motion for reconsideration, which the superior court also denied.

---

[4]     AMC 21.25.050(E) provides that "any person may commence an action in superior court to enforce a compliance order" and sets out the judicial process for such actions.

The Szabos appeal both the denial of their Rule 60(b) motion and the denial of their motion for reconsideration.

## III. STANDARD OF REVIEW

We review denial of Rule 60(b) motions, except for those brought under Rule 60(b)(4),[5] for abuse of discretion.[6] But because the superior court has no discretion to extend the deadline for filing a motion under Rule 60(b)(1), (2), and (3),[7] whether the superior court properly denied a motion under those subsections for untimely filing raises only a question of fact — whether the court correctly found that the time for filing had expired — which we review for clear error.[8] "We review the superior court's decision on a Rule 60(b)(4) motion de novo because the validity of a judgment is strictly a question of law."[9] "We review the denial of a motion for reconsideration for abuse of discretion."[10]

## IV. DISCUSSION

The Szabos argue that the January 2010 hearing was improperly noticed,

---

[5]    *See Blaufuss v. Ball*, 305 P.3d 281, 285 (Alaska 2013).

[6]    *Dickerson v. Goodman*, 161 P.3d 1205, 1207 (Alaska 2007).

[7]    *Vezey v. Green*, 171 P.3d 1125, 1129 (Alaska 2007) (citing *Farrell v. Dome Labs.*, 650 P.2d 380, 384 (Alaska 1982); Alaska R. Civ. P. 6(b)).

[8]    *E.g. Peterson v. Ek*, 93 P.3d 458, 463 (Alaska 2004).

[9]    *Blaufuss*, 305 P.3d at 285 (quoting *Lesnoi, Inc. v. Merdes & Merdes, P.C.*, 307 P.3d 879 (Alaska 2013)) (internal quotation marks omitted).

[10]    *Alaskan Adventure Tours, Inc. v. City and Bor. of Yakutat*, 307 P.3d 955, 959 (Alaska 2013).

causing surprise or voiding the judgment;[11] that the fines were inequitable and beyond their ability to pay; and that the fines were unconstitutionally excessive.[12] The Municipality responds that the procedures followed by the Municipality and the superior court did not violate the Szabos' constitutional due process rights, and the fines did not violate the excessive fine provisions of the United States or Alaska Constitutions.

Correctly understood, the Szabos' current appeal is only from the denial of their Rule 60(b) motion for relief from judgment and subsequent motion for reconsideration. Thus, our review is limited to whether the Szabos are entitled to relief for one of the specific reasons enumerated in Rule 60(b). Because the Szabos fail to cite any provision of Rule 60(b) on appeal, we will analyze their claims within the framework of the provisions they argued in the superior court — Rule 60(b)(1), (4), (5), and (6).[13]

---

[11] The superior court considered this argument, which the Szabos made in untimely motions to dismiss filed after their Rule 60(b) motion, in its order denying the Szabos' motion for relief from judgment. We will consider the argument to the extent it can be viewed as supporting the Rule 60(b) motion.

[12] The Szabos also argue that the superior court erred by concluding that it was required to enforce the daily $250 fines because AMC 21.25.050(E) violates due process. But AMC 21.25.050(E) is irrelevant to the Szabos' case. The administrative proceedings in this case were governed by AMC 21.25.050(A) and (C), not AMC 21.25.050(E). AMC 21.25.050(E) relates only to private enforcement of Municipal ordinances, regulations, or orders. The Szabos' case involved a public enforcement action initiated by the Municipality against the Szabos. The initial enforcement order was issued on Municipality letterhead, and the enforcement officer identified herself as a "Land Use Enforcement Officer." The Municipality never mentioned AMC 21.25.050(E). Because the Municipality properly brought its compliance action under AMC 21.25.050(A) and (C), we do not consider whether AMC 21.25.050(E) is unconstitutional.

[13] These subsections allow relief for "mistake, inadvertence, surprise or excusable neglect"; a void judgment; inequity of continued enforcement of the judgment;
(continued...)

-7- 6873

**A.  The Superior Court Did Not Clearly Err By Finding That Relief Under Rule 60(b)(1) Was Time Barred**.

In the superior court, the Szabos argued that they were entitled to relief under Rule 60(b)(1) — "mistake, inadvertence, surprise or excusable neglect" — because the January 2010 hearing was an unfair surprise, and because they did not receive "adequate and meaningful notice of the subject of the proceedings."  The superior court concluded that their motion for relief under Rule 60(b)(1) was untimely. The Szabos do not clearly raise their unfair surprise argument again on appeal, but, to the extent that they do, the superior court did not clearly err by concluding that the motion for relief was untimely, and we affirm.

Motions for relief under Rule 60(b)(1) must be brought no later than one year after notice of a judgment or order.[14]  "[T]he date of notice is the date shown on the clerk's certificate of distribution."[15]  Courts have no discretion to extend the Rule 60(b)(1) deadline.[16]  Here, the distribution dates for the superior court's final orders were June 4, 2009, and February 19, 2010.  The Szabos did not file their motion for relief

---

[13](...continued)
or a catch-all category for "any other reason justifying relief from the operation of the judgment." Alaska R. Civ. P. 60(b)(1), (4), (5) & (6).

[14]    Alaska R. Civ. P. 60(b).

[15]    Alaska R. Civ. P. 58.1(c)(1)(ii).

[16]    *Vezey v. Green*, 171 P.3d 1125, 1129 (Alaska 2007) (citing *Farrell v. Dome Labs.*, 650 P.2d 380, 384 (Alaska 1982); Alaska R. Civ. P. 6(b)).  Civil Rule 6(b) provides that a court "may not extend the time for taking any action under Rules 50(b), 52(b), 59(b), (e), and (f), and 60(b), except to the extent and under the conditions stated in them."  Rule 60(b) provides that motions may be brought under subsections (4), (5), and (6) "within a reasonable time," but that motions under subsections (1), (2), and (3) must be brought "not more than one year after the date of notice of the judgment or orders."

until February 23, 2011. Because the Szabos did not file their motion for relief under Rule 60(b)(1) until more than one year after they received notice of both orders, the superior court properly found their motion untimely.

**B.      The Szabos Are Not Entitled To Relief Under Rule 60(b)(4).**

In their motion to the superior court, the Szabos argued that they were denied procedural due process, rendering the court's final judgment void. The Municipality argued that there was no procedural due process violation because the Szabos had a "full and fair opportunity to litigate the merits prior to the court's Final Judgment and Order." The superior court concluded that the Szabos' procedural due process rights were not violated because they had ample notice of the January 2010 evidentiary hearing and they had an opportunity to appeal. The Szabos appear to again argue that the judgment is void based on a due process violation.[17]

Although Rule 60(b)(4) allows a party to seek relief from a void judgment, including when the issuing court violated due process,[18] the rule "is not a substitute for a party failing to file a timely appeal."[19] "In the interests of finality, the concept of void judgments is narrowly construed."[20]

It is indisputable that the Szabos had notice of the hearing, which both parties requested the court to reschedule numerous times. The Szabos' belief that the

---

[17]      The Szabos do not clearly tie their arguments on appeal to the specific reasons justifying relief under Rule 60(b), but their due process argument most clearly supports a Rule 60(b)(4) argument that the superior court's order is void.

[18]      *Leisnoi, Inc. v. Merdes & Merdes, P.C.*, 307 P.3d 879, 891 (Alaska 2013) (citing *Holt v. Powell*, 420 P.2d 468, 471 (Alaska 1966)).

[19]      *Blaufuss v. Ball*, 305 P.3d 281, 285 (Alaska 2013) (quoting *Cook v. Cook*, 249 P.3d 1070, 1083 (Alaska 2011)).

[20]      *Leisnoi, Inc.*, 307 P.3d at 891.

hearing would only be a status hearing is difficult to understand given the many communications between the parties and the court. And even if their confusion was the result of a deficiency of notice, it was remedied by the fact that the superior court held another evidentiary hearing in May 2011 to allow the Szabos to present any evidence that they were unprepared to present in January 2010. Because the Szabos received adequate notice and the superior court held an additional evidentiary hearing, the January 2010 evidentiary hearing did not violate due process. Accordingly, the superior court correctly concluded that the Szabos were not entitled to relief from judgment under Rule 60(b)(4).

C. **The Superior Court Did Not Abuse Its Discretion By Concluding That The Szabos Were Not Entitled To Relief Under Rule 60(b)(5).**

In the superior court the Szabos argued that the judgment was inequitable because they did not have the ability to pay. The superior court found that the Szabos "made no showing of inequity . . . within the meaning of [Rule] 60(b)(5)" and cited no change in conditions that would make continued enforcement of the judgment inequitable. The Szabos do not directly argue that the judgment is inequitable under Rule 60(b)(5), but the argument may be inferred from their contention that the fine is unconstitutionally excessive and beyond their ability to pay.

Rule 60(b)(5) allows relief from a judgment where "it is no longer equitable that the judgment should have prospective application." A motion "seeking relief from the prospective application of a judgment requires the court to balance the equities and decide whether relief is warranted."[21] A party may only prevail on a Rule 60(b)(5)

---

[21] *Cox v. Floreske*, 288 P.3d 1289, 1293 (Alaska 2012); *see, e.g.*, *Dixon v. Pouncy*, 979 P.2d 520, 526 (Alaska 1999) (prospective application of child support order was inequitable after DNA test ruled out paternity).

motion where a change in conditions renders prospective application of a judgment inequitable.[22]

The Szabos never alleged any change in circumstances that made prospective application of the judgment inequitable. Indeed no such change in circumstances is apparent; there was no indication the Szabos had made any substantial progress towards cleaning up the property. Because the Szabos made no showing of a change in circumstances, we conclude that the superior court did not abuse its discretion by denying relief under Rule 60(b)(5).

**D.     The Superior Court Did Not Abuse Its Discretion By Concluding That The Szabos Were Not Entitled To Relief Under Rule 60(b)(6)**.

The Szabos argue that the fines imposed against them are unconstitutionally excessive under the Eighth Amendment to the United States Constitution[23] and article I, section 12 of the Alaska Constitution[24] because the fines are disproportionate to their offense and effectively result in a forfeiture of their property. The Municipality argues that there is no requirement that civil penalties be strictly proportionate to the offense, citing federal precedent upholding similarly large fines. The superior court concluded that the Szabos should have made their excessive fines argument on direct appeal and that their failure to do so was fatal. Because this claim does not clearly support relief under any other clause of Rule 60(b), we analyze it under Rule 60(b)(6).

---

[22]     *Cox*, 288 P.3d at 1293 (citing *Dewey v. Dewey*, 886 P.2d 623, 627 (Alaska 1994)).

[23]     Amendment VIII of the United States Constitution provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."

[24]     Article I, section 12 of the Alaska Constitution provides in part: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."

Rule 60(b)(6) allows a court to grant relief from an unjust judgment where "no other Rule 60(b) clause applies, and 'extraordinary circumstances exist.' "[25] Relief under Rule 60(b)(6) is generally only granted where a "judgment was obtained by the improper conduct of the party in whose favor it was rendered or the judgment resulted from the excusable default of the party against whom it was directed under circumstances going beyond the earlier clauses of the rule."[26] "[I]n deciding Rule 60(b)(6) motions we give consideration to the following factors: the prejudice, if any, to the non-moving party if relief from judgment is granted, whether any intervening equities make the granting of relief inappropriate, and any other circumstances relevant to consideration of the equities of the case."[27] Rule 60(b)(6) is not intended to be a substitute for proper litigation of a case.[28]

The Szabos' excessive fines argument does not support relief under Rule 60(b)(6). The rule is not intended to allow a party to raise legal claims that it failed to bring on direct appeal.[29] The Szabos had the opportunity to challenge the constitutionality of the fines on direct appeal after the superior court issued its supplemental order and final judgment in February 2010. Having failed to timely appeal

---

[25] *Cook v. Cook*, 249 P.3d 1070, 1084 (Alaska 2011).

[26] *Lacher v. Lacher*, 993 P.2d 413, 419 (Alaska 1999) (quoting *O'Link v. O'Link*, 632 P.2d 225, 229-30 (Alaska 1981)).

[27] *Juelfs v. Gough*, 41 P.3d 593, 597 (Alaska 2002) (quoting *Norman v. Nichiro Gyogyo Kaisha, Ltd.*, 761 P.2d 713, 717 (Alaska 1988)) (internal quotation marks omitted).

[28] *Ghete v. Anchorage*, 948 P.2d 973, 976 (Alaska 1997).

[29] *See Morris v. Morris*, 908 P.2d 425, 429 (Alaska 1995) (affirming trial court's denial of Rule 60(b) motion where appellant failed to argue that denial of Rule 60(b) motion was in error and instead attempted to argue underlying substantive issues).

the judgment, the Szabos cannot now claim that the fines they are faced with are unconstitutionally excessive. Moreover, the Municipality did not engage in improper conduct to obtain the original judgment. The Municipality followed proper procedures in bringing an enforcement action against the Szabos, worked with the Szabos for several years to develop a plan to clean up their property, and gave the Szabos numerous opportunities to avoid or limit fines. The superior court did not abuse its discretion by denying relief under Rule 60(b)(6).

**E.     The Superior Court Did Not Abuse Its Discretion By Denying The Szabos' Motion For Reconsideration.**

In their motion for reconsideration the Szabos reiterated the arguments made in their motion for relief from judgment and alleged that the superior court failed to adequately address their due process and excessive fine arguments. Because the superior court adequately considered those arguments and properly denied the motion for relief, we conclude that the superior court did not abuse its discretion by denying the Szabos' motion for reconsideration.

**V.     CONCLUSION**

For the reasons discussed, we AFFIRM the superior court in all respects.