IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| MAGGIE PROPERTIES, LLC, a Washington Limited Liability Company, | No. 84549-7-I |
| Respondent, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| BERNARD NOLAN, | |
| Appellant, | |
| ALL OTHER OCCUPANTS, | |
| Defendants | |

DÍAZ, J. — Maggie Properties LLC (Maggie Properties or landlord) filed an unlawful detainer action to evict Bernard Nolan from his apartment, alleging he sent harassing and abusive text messages to the property manager. The trial court granted the unlawful detainer, issued a writ of restitution, and denied a motion for revision. Nolan appeals, claiming that notice for the unlawful detainer was deficient, that his (admittedly) inappropriate texts did not rise to the level of interference with the landlord's use of the apartment, as required by the statute, and that his landlord failed to accommodate his disability. Finding no error, we affirm.

I.    BACKGROUND

Nolan was a tenant in Maggie Properties' residential building in Shoreline for 18 years.  Nolan regularly corresponded via text message with the family who managed the building, including with the mother, and later the daughter, Janice Piper.  As will be described in more detail below, between June and August 2022, Nolan's text messages to Piper became antagonistic after the two had a dispute over some repairs he believed should be made at the apartment.

On July 18, 2022, the landlord filed a complaint with the superior court for unlawful detainer, asking for a writ of restitution under RCW 59.18.650(2)(c).  At the subsequent show cause hearing, Piper provided unrebutted testimony that she found many of the text messages Nolan sent during that summer to be harassing, abusive and/or caused her to fear Nolan, including texts using racially-charged language, profanity, and threats of harm.

In the hearing, when counsel asked Piper why she felt personally threatened, she answered:

> It was the language that was used, the abusive language, um, calling me the C word; telling me that my mother should have aborted all three of us children.  Uh, telling me that I have to stop lurking -– creeping around the building.  To the extent that *I didn't feel I could go up and do my necessary duties at the building for my other tenants without being fearful of Mr. Nolan.*

(emphasis added).

In response, Nolan admitted to sending each and every such message, i.e., those that Piper testified she found harassing or abusive, even after she asked him to stop.  Nolan defended the text messages as "a retaliatory last resort to back off." He further testified he sent his messages "in anger and frustration."  Otherwise, he

2

testified his medication and health "possibly" affected his behavior, but never explained how.

The trial court granted the writ, and denied Nolan's subsequent motion for revision. The court also did not grant Nolan's request, in the alternative, for a trial. Nolan timely appeals.

## II.    ANALYSIS

By way of background, an unlawful detainer action is "a statutorily created proceeding that provides an expedited method of resolving the right to possession of property." Christensen v. Ellsworth, 162 Wn.2d 365, 370-371, 173 P.3d 228 (2007).

"The procedures set forth in the generalized unlawful detainer statutes, chapter 59.12 RCW, 'apply to the extent they are not supplanted by those found in the Residential Landlord-Tenant Act [(RLTA)].'" Randy Reynolds & Assocs., Inc. v. Harmon, 193 Wn.2d 143, 156, 437 P.3d 677 (2019) (quoting Hous. Auth. of City of Pasco & Franklin County v. Pleasant, 126 Wn. App. 382, 390, 109 P.3d 422 (2005)). The RLTA applies to disputes, as here, involving a residential lease. Carlstrom v. Hanline, 98 Wn. App. 780, 786, 990 P.2d 986 (2000). Because "[c]hapters 59.12 and 59.18 RCW are statutes in derogation of the common law," they "are strictly construed in favor of the tenant." Harmon, 193 Wn.2d at 156.

A landlord has cause to evict a tenant if, among other grounds, the "tenant continues in possession after having received at least three days' advance written notice to quit after [the tenant] commits . . . substantial or repeated and unreasonable interference with the use and enjoyment of the premises by the

3

landlord or neighbors of the tenant." RCW 59.18.650(2)(c). "A tenant cannot hold over in the premises after the termination of the rental agreement." Harmon, 193 Wn.2d at 156 (citing RCW 59.18.290). If the tenant has not complied with the eviction, the landlord may serve the tenant a summons and complaint. Id. (citing RCW 59.18.365). The landlord may apply for a writ of restitution "at the same time as commencing the action or at any time thereafter." Id. at 157.

"To obtain a writ, a landlord must apply for an order for a show cause hearing . . . and serve that order on the tenant. A show cause hearing is a 'summary proceeding[ ] to determine the issue of possession pending a lawsuit' and is not the final determination of rights in an unlawful detainer action." Id. (alteration in original) (citation omitted) (quoting Hanline, 98 Wn. App. at 788, RCW 59.18.370). This opportunity for immediate temporary relief makes the show cause process similar to a preliminary injunction proceeding. Faciszewski v. Brown, 187 Wn.2d 308, 315 n.4, 386 P.3d 711 (2016).

"At the show cause hearing, the court will determine if the landlord is entitled to a writ of restitution before a trial on the complaint and answer." Harmon, 193 Wn.2d at 157 (citing RCW 59.18.380). At the hearing, the "court shall examine the parties and witnesses orally to ascertain the merits" of the case. RCW 59.18.380. "If a writ of restitution is issued at the RCW 59.18.380 show cause hearing, the landlord can deliver the writ to the sheriff, who will serve it on the tenant." Harmon, 193 Wn.2d at 158 (citing RCW 59.18.390(1)).

"Whether or not the court issues a writ of restitution at the show cause hearing, *if material factual issues exist*, the court is required to enter an order

directing the parties to proceed to trial on the complaint and answer." Id. at 157 (emphasis added).

A.      Notice for eviction

We conclude that Nolan had sufficient notice to respond and prepare a defense, thereby satisfying RCW 59.18.650(6)(b).

1. Law

When a landlord provides a tenant a notice of unlawful detainer,

> [A]ll written notices . . . must (a) be served in a manner consistent with RCW 59.12.040;[1] and (b) identify the facts and circumstances known and available to the landlord at the time of the issuance of the notice that support the cause or causes with enough specificity so as to enable the tenant to respond and prepare a defense to any incidents alleged.

RCW 59.18.650(6)(b).

At the time of this opinion, it appears that only one case specifically has discussed RCW 59.18.650(6)(b). In Daniels, at issue was whether the landlord's notice to a tenant provided enough facts for the tenant to "effectively rebut the conclusion reached" by the landlord. Kiemle & Hagood Co. v. Daniels, 26 Wn. App. 2d 199, 215, 528 P.3d 834 (2023) (citing Hous. Auth. Of DeKalb County v. Pyrtle, 167 Ga. App. 181, 182, 306 S.E.2d 9 (1983)). The court concluded that the notice was sufficient because it included and referred to prior notices the property manager sent to the tenant regarding lease violations. Id. at 217. Thus, such

---

[1] To be compliant with RCW 59.12.040, the landlord must, among other things, provide proof of service by delivering a copy of the relevant notices to the tenant. RCW 59.12.040. Maggie Properties affixed a copy of its notice to terminate to Nolan's door, as well as sending the same by certified mail. Nolan does not contest that condition (a) was met and, thus, we will not discuss service further.

notice was enough to give the tenant "a sufficient opportunity to defend against [the] allegations." Id.

"A challenge to the adequacy of notice presents a mixed question of law and fact, which we review de novo." Hall v. Feigenbaum, 178 Wn. App. 811, 819, 319 P.3d 61 (2014).

2. Discussion

The landlord's notice stated, "Your tenancy is being terminated in accordance with RCW 59.18.650(2)(c), which provides a month-to-month tenancy may be terminated upon 3 days' notice where . . . substantial or repeated and unreasonable interference with the use and enjoyment of the premises by . . . the landlord." The notice attached an explanation of the "facts and circumstances" of that interference, specifically citing his "conduct and behavior" of "repeatedly sending lengthy harassing, abusive, and threatening text messages to landlord, which include hate speech, despite requests to cease such communications."[2]

Nolan argues that the notice was insufficient because it lacked specificity under RCW 59.18.650(6)(b). According to Nolan, the notice was a "list of alleged behaviors, none of which contained names of witnesses, dates, or other specific facts." Nolan relies on Tacoma Rescue Mission v. Stewart, 155 Wn. App. 250, 288 P.3d 1289 (2010), for the claim that "names, dates," etc. are required in the notice.

---

[2] The notice included four additional allegations of interference. The trial court ruled that the first four facts and circumstances were not sufficiently specific to provide adequate notice, but ruled that the reference to Nolan's texts met the specificity requirements. Maggie Properties did not cross appeal, and we will not consider further whether the other listed grounds were sufficiently specific.

In Stewart, decided about a decade before the RCW at issue here was enacted, Stewart, the tenant, appealed his eviction from federally subsidized public housing. Id. at 251. Stewart argued that the trial court erred because Tacoma Rescue Mission (TRM) gave inadequate notice *under the terms of the lease*. Id. Similar to the statute here in question, Stewart's lease required TRM to "state the reasons for such termination with enough specificity to enable the resident to understand the grounds for termination." Id. at 255. However, the lease also expressly required the notice to include "dates, times, locations, and the tenant's alleged victims so that the tenant can prepare a rebuttal to the landlord's accusations." Id. Nolan argues such details should be required here.

Stewart is facially distinguishable. The dispute in Stewart was about the specific terms of a lease. Id. at 257. The dispute in the present case is over the meaning of the statute. Stewart did not address and did not create binding requirements of notice under RCW 59.18.650(6)(b), which again requires only "enough specificity as to enable the tenant to respond and prepare a defense to any incidents alleged." Daniels, 26 Wn. App. 2d at 217.

Here, Nolan admitted he texted Piper, whose family had owned and managed the building as long as Nolan had resided there. He admitted to sending her many texts that included racially charged language, profanity, and possible threats, despite her requests to stop, which will be reviewed in more detail below. There is nothing in the record evincing confusion about which texts were at issue. If there had been any doubt, Nolan simply could have reviewed the text messages he wrote and sent from his own phone, which included dates, times, and other

information he claims is required.

Nolan also was able to, and did, prepare a cogent response, including, in part, that the inappropriate text messages were due to the state of his mental health in the summer of 2022, which he supported with a declaration from a social worker who attempted to connect him with proper medical treatment.

In short, the notice sufficiently identified the recipient (the landlord) and content of the offending text messages, which Nolan admitted sending, were well-documented and available to him. And, because he was able to attempt to explain the context of those texts at the show cause hearing, we conclude Maggie Properties gave Nolan sufficient notice under RCW 59.18.650(6)(b).

B.    Repeated and unreasonable interference

1. Substantial evidence

We conclude that there was substantial evidence that Nolan's text messages to the property manager amounted to substantial or repeated and unreasonable interference with the landlord's use and enjoyment of the property.

a.  Additional factual background

At the show cause hearing, Piper testified that during the summer of 2022, Nolan sent her continuous text messages over a period of several days, which were "consistently harassing and abusive . . . when I asked him to stop . . . they continued. Often they would continue day and night for up to two days straight." The trial court admitted the text messages.

More specifically, Piper testified as to at least three types of text messages she found offensive. First, she testified Nolan sent text messages that were

8

physically threatening. For example, her counsel asked, "At some point did Mr. Nolan reference that a friend of his, Todd, wanted to kill you?" Piper answered, "Yes, he did." Piper was referring to the following text message, "TODD well I dunno he'd like to kill you for so many abuses."

Second, Piper expressed concern over the racially charged nature of Nolan's texts. She testified, "He blames his Chinese doctors for all his health issues." She further testified:

> I told him that it disturbed me because I have several Asian family members and loved ones . . . he continued his texts with that abusive language . . . we have a repair person who is Hispanic . . . and he said he didn't want the Mexican guy in his place.

Finally, Piper testified about several defamatory and profane statements Nolan made, including:

- Stating it was "too late cunt. I'll be dragging it out with eviction like all your other pissed off tenants."

- Calling her family "assholes…pull the plug on your ugly racist mom….she would have been better aborting you all."

- Calling her family "abusive, evil monsters."

- Calling Piper a "pig" and "shitheads, fuck you all."

In short, Piper testified that she felt personally threatened by the nature of the texts, explaining, "I didn't feel I could go up and do my necessary duties at the building for my other tenants without being fearful of Mr. Nolan."

For his part, when examined by his counsel, again, Nolan did not deny he sent each of these texts. Instead, he testified he was "withdrawn" and "hostile" because of estrangement from his own family members and because he had

9

recently been released from jail. Further, Nolan testified to knowing that Piper asked him to "stop sending her harassing text messages" more than once. He characterized his messages to Piper "as a retaliatory last resort to back off . . . in anger and frustration."

As to the threat that "Todd" would "like to kill you for so many abuses," Nolan testified as follows:

> Q: You were – you were letting Ms. Piper know that your brother-in-law –
> A: I have an ally.
> Q: Would like to kill her. Is that correct?
> A: No. Just that I have an ally and he's angry. That's a figure of speech.
> Q: So, it says he'd like to kill you? Is that correct?
> A: No. Uh, it's a figure of speech. Like he'll kill ya. I mean, that's about it.

Finally, despite his counsel's repeated efforts, Nolan did not explain how his medications or health conditions affected his behavior. And, he provided no evidence to contradict Piper's stated fear or her claim she could not complete her duties as property manager.

### b. Standard of review

"'On appeal, this court reviews the superior court's ruling, not the commissioner's.'" Tedford v. Guy, 13 Wn. App. 2d 1, 12, 462 P.3d 869 (2020) (quoting Maldonado v. Maldonado, 197 Wn. App. 779, 789, 391 P.3d 546 (2017)). "Thus, here we review the superior court's order adopting the commissioner's rulings, findings of fact, and conclusions of law." Id.

"A trial court's findings of fact will not be overturned on appeal if it is supported by substantial evidence." Leda v. Whisnand, 150 Wn. App. 69, 85 n. 6,

207 P.3d 468 (in an unlawful detainer action, considering whether the trial court's "finding of fact" on an element of a writ was erroneous); MH2 Co. v Hwang, 104 Wn. App 680, 685, 16 P.3d 1272 (2001) (in an unlawful detainer action, holding "On appeal, the trial court's findings of fact must support its conclusions of law; the findings must be supported by substantial evidence").

"Substantial evidence exists when there is a sufficient quantity of evidence to persuade a fair-minded, rational person that a finding is true." Pham v. Corbett, 187 Wn. App. 816, 825, 351 P.3d 214 (2015) (quoting Hegwine v. Longview Fibre Co., Inc., 132 Wn. App. 546, 555-56, 132 P.3d 789 (2006)). Unchallenged findings of fact are verities on appeal. Id.

c. Discussion

In its order granting the writ of restitution, the court found "by a preponderance of the evidence that the text messages . . . constitute[d] . . . or substantial repeated and unreasonable interference . . ." In particular, the court found Piper's reaction to the text messages "reasonable."

Nolan contends that (1) Maggie Properties "failed to provide any evidence that the landlord had not been able to use or enjoy the property . . . because of [Nolan's] texts." Nolan further argues (2) that granting the writ "based on the subjective fears of the property manager" was error. We conclude neither argument is persuasive.

First, it is simply untrue that there is no evidence the landlord could not use and enjoy the property because of Nolan's threats. Piper testified she "didn't feel like [she] could . . . do [her] necessary duties at the building for my other tenants

11

without being fearful of Mr. Nolan," and Nolan provided no contravening evidence and did not even cross-examine her on this statement.

Second, we review, not only whether Piper subjectively experienced fear,[3] but ultimately whether the commissioner reasonably concluded, based on the available evidence, that Nolan was in violation of RCW 59.18.650(2)(c) by repeatedly and unreasonably interfering with the property manager's use.

Here, consistent with RCW 59.18.650(2)(c), the commissioner based its decision on the 88 pages of text messages between Piper and Nolan attached to the parties' briefing, and the sworn testimony of both. Piper testified to the contents of the text messages, including threats, profanity, and other offensive content. Piper testified to asking Nolan to "stop sending these harassing texts" multiple times, and expressed that, based on all of the correspondence she received from him, that she felt afraid to enter the property. She testified that this fear, caused by Nolan's messages, prevented her from completing her duties as property manager. In contrast, Nolan offered no evidence to contradict the events as Piper described them, or to contest whether she felt afraid to enter the property. He admitted to sending the text messages. And, Nolan effectively admitted the texts were inappropriate, when acknowledging he would never say it verbally to her.

The totality of these facts are such that they could persuade a reasonable

---

[3] It is not error to consider under RCW 59.18.650(2)(c) whether the landlord or property manager subjectively experienced fear. The statute asks whether Nolan engaged in "unlawful activity that affects the use and enjoyment of the premises, or other substantial or repeated and unreasonable interference with the use and enjoyment of the premises by the landlord or neighbors of the tenant." RCW 59.18.650(2)(c). One way to ascertain whether such conduct occurred is to determine whether the landlord or property manager subjectively experienced fear.

person that Nolan interfered with the use and enjoyment of the property because Piper reasonably was afraid to enter the property due to Nolan's text messages toward her. A "fair-minded and rational person" could conclude that such text messages, at a minimum, would cause a fatal rift in any relationship, including the relationship between a landlord and a tenant. Pham, 187 Wn. App. at 825.

Thus, the court did not err in finding that the text messages caused a repeated and substantial interference with the landlord's ability to enter and use the property. Therefore, we conclude that granting the writ based on this evidence was not an abuse of discretion.[4]

2. Failure to grant Nolan a trial

We conclude that Nolan's statements do not otherwise create a genuine issue of material fact warranting a trial, and thus, the trial court did not err in not granting a trial.

a. Standard of review

As part of the unlawful detainer process, a landlord may seek relief such as a termination of a tenant's lease at a show cause hearing regardless of whether

---

[4] Nolan also argues that this court should analyze this matter as similar to a nuisance cause of action. Specifically, he cites to authority from other state courts, which construe claims of common law nuisance and unreasonable interference to be synonymous. In turn, Nolan avers this court should impose the higher burden of proof required in nuisance claims. This argument is unpersuasive, first, because RCW 59.12.180 states that "the provisions of the laws of this state with reference to practice in civil actions are applicable to, and constitute the rules of practice in the proceedings mentioned in this chapter," including the preponderance of the evidence standard. Nolan also cites to no binding authority that should compel this panel to apply a different standard. "When a party provides no citation to support an argument, this court will assume that counsel, after diligent search, has found none. State v. Loos, 14 Wn. App. 2d 748, 758, 473 P.3d 1229 (2020).

the court grants a writ of restitution. Webster v. Litz, 18 Wn. App. 2d 248, 254, 491 P.3d 171 (2021). However, if issues of material fact exist, the matter must proceed to trial in the "usual manner." Id. (quoting Meadow Park Garden Assocs. v. Canley, 54 Wn. App. 371, 374, 773 P.2d 875 (1989)).

For example, in Webster, a case addressing unlawful detainer, this court concluded there was a genuine issue of material fact warranting trial when the landlord argued the tenant was using methamphetamine on the premises, and the tenant testified they did not. Id. at 255. "Because a question of fact existed about the use and presence of methamphetamine on the premises, a trial was required before the court could grant the Websters' request for 'other relief.'" Id. at 255-256 and id. at 253-254 (holding, we must look at the specific requirements of RCW 59.18.380 that if there is "a substantial issue of material fact" as to the right of possession, the court shall enter an order directing the parties to proceed to trial. (quoting RCW 59.18.380)); see also Wash. State Ass'n of Counties v. State, 199 Wn. 2d 1, 13, 502 P.3d 825 (2022).

Stated otherwise, even if a landlord obtains preliminary success through a writ of restitution, trial on the right of possession must be ordered if the tenant raises genuine issues of material fact pertaining to a defense or set-off. RCW 59.18.380. "This is nearly the identical language that governs summary judgment." Daniels, 26 Wn. App. 2d at 218 (citing CR 56(c)). And of course, we review summary judgment orders de novo. Id. at 218; see also Staples v. Allstate Ins. Co., 176 Wn.2d 404, 410, 295 P.3d 201 (2013). "Thus, it appears something close to de novo review should apply, at least when a tenant denies the landlord's

grounds for eviction or raises an affirmative defense." Id. at 218-219. "A tenant's legal defense might be a claim that the landlord's basis for eviction is untrue." Id. at n.5.

Finally, a court may resolve a question of reasonableness "as a matter of law where reasonable minds could come to only one conclusion." Lakey v. Puget Sound Energy, Inc., 176 Wn.2d 909, 924, 296 P.3d 860 (2013).

   b.   Discussion

The only specific attempt Nolan makes to create a genuine issue of material fact is by claiming he used "kill" as a "figure of speech." Otherwise, Nolan only generically claims that "there was at least a material dispute as to whether his behavior rose to the level of repeatedly or substantially and unreasonably interfering with the landlord's use of the property."

As to the specific argument, we hold that reasonable minds can only reach one conclusion, given the context of the text exchanges; namely, that Nolan's threat that an ally wants to kill her is a threat of some kind. Nolan had used that term in the context of an ongoing conflict with Piper, where (again) he insulted, harassed and abused her and her family verbally. No reasonable juror could conclude that he did not interfere with the use and enjoyment of the property. In that charged context, no reasonable juror would conclude that the statement "my ally wants to kill you" is not a physical threat of some kind.

In response, for the first time in this appeal, Nolan argues, without citing any authority of such a requirement, that "there was never any evidence that [he] even attempted to harm anyone." Assuming he means "physical harm," there is no

authority, and we decline to create any, that a landlord must wait for a tenant to attempt to physically harmed them before terminating the tenancy. DeHeer v. Seattle Post-Intelligencer, 60 Wn.2d 122, 126, 372 P.2d 193 (1962) ("Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none.").

Finally, as to the second generic argument, we hold that it is insufficient to simply claim without any reference to the record, as here, that the court effectively just got it wrong. Welch v. Brand Insulations, Inc., 27 Wn. App. 2d 110, 115, 531 P.3d 265 (2023) ("If the moving party satisfies its burden, then the burden shifts to the nonmoving party to 'set forth specific facts evidencing a genuine issue of material fact for trial.'") (quoting Schaaf v. Highfield, 127 Wn.2d 17, 21, 896 P.2d 665 (1995)).

Because Nolan cites to nothing in the record creating a genuine issue of material fact as to the events which led to the landlord seeking eviction or the tenant's defenses, the trial court did not err by declining to grant a trial. Id. at 117 (summary judgment is appropriate "'if, from all the evidence, a reasonable person could reach only one conclusion.'") (quoting Folsom v. Burger King, 135 Wn.2d 658, 663, 958 P.2d 301 (1998)).

C.   Reasonable accommodation

We conclude that the court did not err in denying his reasonable accommodation claim because Nolan did not demonstrate multiple elements of the claim, as required under law.

1. Law

"Both federal and state law prohibit landlords from discriminating against disabled tenants, including the failure to reasonably accommodate a tenant's disability." Daniels, 26 Wn. App. 2d at 221 (citing 42 U.S.C. § 3604(f)(2), (3)(B) (the Fair Housing Act ("FHA")); RCW 49.60.222(1)(f), (2)(b)). As a defense to eviction, a tenant may claim a landlord failed to accommodate their disability. Id.

"To make out a claim of discrimination based on failure to reasonably accommodate, a plaintiff must demonstrate that (1) he suffers from a handicap as defined by the FHAA; (2) defendants knew or reasonably should have known of the plaintiff's handicap; (3) accommodation of the handicap 'may be necessary' to afford plaintiff an equal opportunity to use and enjoy the dwelling; and (4) defendants refused to make such accommodation." Giebeler v. M & B Assocs., 343 F.3d 1143, 1147 (9th Cir. 2003); see also, Daniels, 26 Wn. App. 2d at 221-222. The FHA only requires accommodations that are "reasonable." Daniels, 26 Wn. App. 2d at 222 (quoting Giebeler, 343 F.3d at 1148).

2. Discussion

At the show cause hearing, Nolan testified to receiving social security disability benefits based on his "depression related to fibromyalgia, and chronic fatigue syndrome" as well as "spinal stenosis which includes occipital pain syndrome, which is a headache condition." He testified that he had bouts of depression for forty years. He described frustration with the condition of the apartment and concern that it affected or exacerbated an eye condition. He also texted the property managers about his eye symptoms generally. From this

testimony, Nolan argues that the trial court erred because it denied his reasonable accommodation claim, or affirmative defense, when it granted the writ of restitution.

Arguably, Nolan meets the first two elements of the test from Giebeler. Namely that he suffers from a "handicap" and the landlord knew or reasonably should have known about it. Giebeler, 343 F.3d at 1147. However, neither in the show cause hearing nor in the briefing, did Nolan connect his health conditions to a reasonable accommodation that the landlord could provide. At the hearing, he discussed how his conditions impaired his life and that he received benefits and treatment for those conditions. Despite his counsel's repeated attempts, Nolan did not explain how any of his conditions could manifest as causing him to send repeated, threatening, and offensive correspondence.

In other words, the issue is whether there is a causal link between the landlord's alleged failure to accommodate and Nolan's disabilities. Id. at 1155. Giebeler is an instructive contrast. There, the court found a causal link between Giebeler being unemployed due to his disability, leaving him "insufficient income to qualify for the apartment." Id. The landlord denied his proposed accommodation of having his mother pay for the apartment, thus, preventing him from his equal opportunity to enjoy a dwelling he otherwise would have. Id. at 1155-1156.

Here, Nolan did not explain how the text messages he sent to the property management were related to his conditions. On the contrary, Nolan testified, unrebutted, that he sent the text messages to Piper "out of anger and frustration." He did not affirmatively blame his behavior on his diagnosed depression or his

18

physical pain. Nothing in the record, including Nolan's own testimony, supports the claim that his behavior was a result of his "heavy medication," as suggested in his briefing. Thus, Nolan does not meet the third element.[5]

As to the fourth element (the landlord's refusal to make a necessary accommodation), we are able only to assess the accommodation that Nolan requested. In the hearing, Nolan requested more time to connect with crisis care professionals. Otherwise, Nolan did not explain how the landlord should have accommodated any of his conditions and there is no record of Nolan making a request for the landlord to deny prior to the hearing. Nor did Nolan provide Maggie Properties enough information to show he should have received an accommodation as in Giebeler. Thus, Nolan also does not meet the fourth element.

We further note that, on this record, it would not have been a "reasonable" accommodation, or part of a reasonable accommodation, to require a landlord to continue to rent to a tenant who sends continual profane and threatening text messages after being asked to stop. Nolan requested more time to seek help. However, it is not reasonable to let Nolan stay indefinitely and to allow him to continue to send harassing and correspondence, which indisputably caused the property manager to be afraid to enter the property.

---

[5] Nolan would have presented a stronger case if he had testified the symptoms of his disability clearly manifested as uncontrollable utterances. For example, if he established that, and warned the landlord, he was prone to sending such outbursts, he may have been able to show a connection between this behavior and a proposed accommodation of accepting such messages without consequence. But again, he made clear in his testimony that his texts were simply retaliatory.

Finally, in his briefing, Nolan characterizes the problem with trial court's order simply as an issue of whether a landlord may evict a tenant because they send "heated texts" while experiencing a mental health crisis. We review Nolan's statements in the hearing and in his correspondence rather than how the briefing characterized his state of mind at that time. Nolan himself did not testify that he sent the texts due to his mental state, but only in "anger" and in "retaliation." There is nothing in the record that supports the predicate of Nolan's argument, namely, that the landlord evicted him due to a *specific incident* of a mental health crisis. That choice was not before the landlord. Thus, this argument also does not support Nolan's reasonable accommodation claim as a matter of law.

### III.    CONCLUSION

We affirm the trial court's decisions to grant Maggie Properties a writ of restitution, to not order a trial, and to deny Nolan's reasonable accommodation claim.

Díaz, J.
_____

WE CONCUR:

Feldman, J.    _____    Mann, J. _____

20